**MAGNETICS, INC., Plaintiff-Appellant,**

v.

The **ARNOLD ENGINEERING COMPANY et al., Defendants-Appellees.**

No. 18182.

United States Court of Appeals, Seventh Circuit.

Jan. 19, 1971.

Rehearing Denied Feb. 17, 1971.

Sidney Neuman, Harry J. Roper, Chicago, Ill., Paul T. O'Neil, Raymond N. Baker, Washington, D.C., for plaintiff-appellant.

Dugald S. McDougall, Robert L. Kahn, Chicago, Ill., for defendants-appellees.

Before KILEY, FAIRCHILD, and CUMMINGS, Circuit Judges.

PER CURIAM.

Plaintiff is the owner of three patents that it sought to enforce in this action. Eyberger Reissue Patent 25,441 and Eyberger Patent 3,244,782 are apparatus and method patents for compressing metallic powder into toroidal (doughnut-shaped) cores. The third patent, Brandon-Eyberger 3,011,213, covers a machine for lubricating die cavities.

The district court's opinion held each of the patents invalid because of

obviousness (35 U.S.C. § 103) and public use more than one year before their application dates (35 U.S.C. § 102(b)). The court also held that claims 1, 2, 7, and 11 of the reissue patent, if valid, were not infringed. 309 F.Supp. 291. Since we conclude that the public use defense must be sustained, we do not reach the other issues.

Toroidal magnetic cores, commonly 1 inch in diameter and ⅜ inch thick, are extensively used in the manufacture of electrical components in the telephone industry. Prior to 1954, these cores were formed manually in segmented dies. However, in early 1954, engineers of the Western Electric Company discovered that British toroidal magnetic cores had been pressed in solid dies with tapered side walls, lending themselves to fully automatic production. Consequently, these cores are now normally pressed in one-piece solid dies instead of in segmented dies.

The public use portion of the Patent Act provides that a person shall not be entitled to a patent if "the invention was * * * in public use * * * in this country, more than one year prior to the date of application for patent in the United States" (35 U.S.C. § 102(b)). Because of their filing dates, the two Eyberger patents would be barred by public use before May 17, 1956, and the Brandon-Eyberger patent would be barred by public use before February 19, 1957.

The district court found that beginning in October 1954, Western Electric produced toroidal magnetic cores from permalloy powder on a one-piece tapered carbide die, a carbide center post, and a mounted carbide pressure ring which were assembled on a single-station Denison press. Until the middle of 1955, toroidal magnetic cores were so produced by Western Electric, with thousands of them being shipped to its customers. Because of this success, Western Electric decided to automate in June 1955. It commenced producing these cores on automatic machinery employing one-piece solid dies in October 1957.[1]

Similarly, in November and December 1955, defendant Arnold Engineering Company produced these cores with one-piece tapered carbide solid dies on a single-station Elmes press, sometimes employing mounted, and sometimes loose pressure rings. Thousands of these cores were shipped to Arnold's customers. Before mid-July 1956, Arnold produced several thousand more cores in solid dies on a multi-station Denison press, employing an automatic die lubrication machine.

To avoid the holding of the district court that from 1954 through the first part of 1956 Western Electric and Arnold had employed the invention described in the two Eyberger patents, plaintiff argues that "the aspects of automation disclosed and claimed in the two Eyberger patents" were not used by Western Electric or Arnold prior to May 17, 1956, the critical date. However, the claims of these patents are not limited to automation of any type, nor even to multi-station presses. In fact, plaintiff has conceded that the claims of the two patents "do not contain the word 'automation' or 'automatic'." Since the two inventions were not limited to automatic machinery, it is immaterial that Western Electric and Arnold used single-station presses in producing their cores on one-piece solid dies before May 17, 1956. The prior practice or machine does not have to be as efficacious as the patented one, nor need there be identity between the two. 1 Deller's Walker on Patents (2d ed.), § 65, p. 314, and Supp. pp. 39, 43. Moreover, Western Electric's and Arnold's public use of the Eyberger apparatus and method would cover any obvious improvements by the patentee, such as automation or obvious variations in the methods employed for ejecting the

---

1. Plaintiff's brief gives the date as October 3, 1957, and defendants' brief as June 1958.

finished cores.[2] See 1 Deller's Walker on Patents, Supp. p. 41; cf. Sutter Products v. Pettibone Mulliken Corp., 428 F.2d 639, 650–651 (7th Cir. 1970).

Plaintiff next asserts that under 35 U.S.C. § 102(b) public use must be "in the usual course of producing articles for commercial purposes." However, as the Supreme Court observed in Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 20, 59 S.Ct. 675, 684, 83 L.Ed. 1071, "a single use for profit, not purposely hidden," is public use within the Patent Act. See also Randolph v. Allis-Chalmers Mfg. Co., 264 F.2d 533, 535 (7th Cir. 1959).

■ Plaintiff also urges that the statutory bar of 35 U.S.C. § 102(b) does not apply because Western Electric's and Arnold's activities were not "accessible to the public." It is irrelevant whether the use informed the public. Gillman v. Stern, 114 F.2d 28, 31 (2d Cir. 1940); Rosaire v. National Lead Co., 218 F.2d 72, 74–75 (5th Cir. 1955). Neither Western Electric's nor Arnold's solid die work was kept secret, for, as the district court found, these operations were carried on openly by ordinary factory help, with no attempts made to hide the operations from their employees or visitors. Information about the project was given to their suppliers too. Since no evidence was adduced that Western Electric considered this work to be secret or confidential, it is immaterial that its employees and Arnold had agreed not to disclose secret or confidential knowledge acquired from Western Electric.

■ In a final effort to avoid the public use defense, plaintiff attacks Western Electric's and Arnold's solid die activity as experimental. However, the experimental use doctrine only lifts the one-year statutory bar where the experimental use is by the inventor or persons under his control. Bourne v. Jones, 114 F.Supp. 413, 419 (S.D.Fla.1952), affirmed, 207 F.2d 173 (5th Cir. 1953), certiorari denied, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398; Monolith Portland Midwest Co. v. Kaiser Alum. & Chem. Corp., 267 F.Supp. 726, 785 (S.D.Cal. 1966), affirmed, 407 F.2d 288 (9th Cir. 1969); George R. Churchill Co. v. American Buff Co., 365 F.2d 129, 134 (7th Cir. 1966). This exception to the one-year public use bar was devised to permit an inventor to perfect his invention. Furthermore, as the district court observed:

> "Having perfected the solid die by September 1954, [Western Electric employee Richard] Graf and his superiors knew that it was practical. They were no longer experimenting with the invention."

Instead of being experimental, Western Electric's and Arnold's operations resulted in the commercial production and shipment of thousands of toroidal magnetic cores through using one-piece solid dies prior to the crucial date. In light of Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 20, 59 S.Ct. 675, 83 L.Ed. 1071, this was sufficient practical application to avoid the one-year bar.

As to the lubricating machine patent, plaintiff assails the district court's finding that Arnold used a lubricating device which automatically sprayed the die molds when operating its Denison press from May 1956 through July 1956. The testimony of Graf, Harold Kristensen, and Stefan Garvin furnishes adequate support for this finding, and the location of the oil reservoir is of no moment.

The judgment is affirmed.

---

2. Eyberger testified that putting the die equipment into an automatic press is *per se* a matter of engineering design rather than invention.