**SEAL–FLEX, INC., Plaintiff,**

v.

**ATHLETIC TRACK AND COURT CONSTRUCTION, a Michigan corporation, and McBroom Construction, a foreign corporation, Defendants.**

**No. 91–CV–76949–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 15, 1994.

Order for Entry of Final Judgement
Oct. 18, 1994.

Thomas N. Young, Krass & Young, Troy, MI, and Marshall G. MacFarlane, Krass &

Young, Ann Arbor, MI, for Seal–Flex, Inc. and Current Surfaces, Inc.

Gerald E. McGlynn, III, Bliss McGlynn, Bingham Farms, MI, Paul W. Harty, Farmington Hills, MI, Owen E. Perry, Reising, Ethington, Barnard, Perry & Milton, Troy, MI, for Athletic Track and Court Const.

Thomas A. Hallin, Harness, Dickey & Pierce, Troy, MI, for McBroom Const.

## ORDER GRANTING DEFENDANT ATCC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

HACKETT, District Judge.

This is a patent infringement/invalidity action arising out of two patents which cover a method of installing rubberized athletic tracks. Defendant Athletic Track and Court Construction (ATCC) filed a motion for partial summary judgment seeking a declaration that the patents are invalid. For the reasons stated below, defendant ATCC's motion for partial summary judgment shall be granted.

### I. BACKGROUND

Defendant ATCC seeks summary judgment on the issue of patent validity.[1] The patents involved, United States Patent Nos. 4,474,833 ('833) and 4,529,622 ('622), were invented by Marvin Maxfield. Maxfield developed the patented invention after working for several years in the asphalt paving business. In 1977–78, Maxfield formed plaintiff corporation Seal–Flex. In 1978, Maxfield developed a running track surface of latex and rubber particles made from ground up tires. He installed a running track surface at Derby High School in Wichita, Kansas. The Derby method was labor intensive and costly.

After the installation of the Derby track, Maxfield began experimenting to install a rubber particle track in a less costly and labor intensive manner. While developing the patented method, Maxfield worked with Mike Sweeney, general manager of Ritchie Tennis & Track (Ritchie). Sweeney conducted experiments with Maxfield and the two worked together to develop a new method of

---

1. Defendant McBroom Construction has been dismissed from this lawsuit pursuant to a settlement agreement.

athletic track surface installation. The method Maxfield ultimately developed for installing a rubber surface track is covered by the patents at issue in this lawsuit.

The '833 patent is entitled "Method For Constructing All Weather Surface." The patent application for the '833 patent was filed on August 23, 1982. The '622 patent is also entitled "Method For Constructing All Weather Surface" and plaintiff maintains that it is a "continuation-in-part" of the '833 application. The application for the '622 patent was filed on September 4, 1984.

In its motion for summary judgment, defendant argues that the patents are invalid under 35 U.S.C. § 102(b) because the patents were "on-sale" or in "public use" more than one year prior to the date of the patent application. Defendant ATCC points to four events in support of its motion for summary judgment which it alleges proves that the patents were "on-sale" or in "public use" more than one year prior to its patent application. These events are the sale of a track using the patented method to Beloit High School in 1981, plaintiff Seal–Flex's alleged admission that the patented method was in commercial use in 1982, and offers to sell a track using the patented method to Logan High School (Logan) and Garden City Community College (Garden City) in 1981.

Although defendant originally filed its motion for summary judgment in 1992, the motion is only now ready for review due to a stay order which was recently lifted. The action was stayed pending resolution of another patent infringement case filed in the Western District of Michigan and assigned to Judge Gibson. *Seal–Flex, Inc. v. Atlas Tracks, Inc.*, No. 92–194, 1994 WL 750605 (W.D.Mich. Feb. 12, 1993). The case filed in the Western District involved the same issue involved in this case: whether the '833 and '622 patents are valid. As in the case before this court, defendant Atlas Tracks, Inc. in the Western District case argued that its motion for summary judgment should be granted because of the Beloit sale, and the offer to sell to Logan High School.[2]

On February 12, 1993, Judge Gibson issued an order holding the patents invalid based on his finding that a definite offer to sell a track constructed from the patented process was made at least one year prior to the patent application based on the Logan sale. Judge Gibson held that summary judgment was not appropriate based on the Beloit sale, however, because facts remained in dispute as to whether the Beloit track was experimental. Plaintiffs in that action then filed a motion for reconsideration which Judge Gibson denied. Final judgment was entered as to the patent claim, and plaintiffs then filed an appeal of the patent validity issue to the Court of Appeals for the Federal Circuit. Shortly after the appeal was filed, the parties settled the dispute and stipulated to an order vacating Judge Gibson's ruling that the patents were invalid.

Because Judge Gibson's ruling that the patents are invalid has been vacated, neither party has argued that they have res judicata or collateral estoppel effect. However, in considering the parties' briefs and arguments in this case, the court has considered Judge Gibson's opinions as persuasive authority.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The United States Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celo-*

---

**2.** However, defendant Atlas Tracks, Inc. did not argue that the Garden City offer invalidated the patent as defendant ATCC has done in this case. Defendant Atlas Tracks stated that it could not determine whether a definite offer to sell a track to Garden City was made before the critical date, but the fact that representatives of Garden City were shown the Beloit track should be considered evidence that the Beloit track was not experimental but, instead, was used for commercial purposes. *Seal–Flex, Inc. v. Atlas Tracks, Inc.*, No. 92–194 at 4, 1994 WL 750605, *5 (W.D.Mich. Feb. 12, 1993).

*tex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

"[T]he standard for determining whether summary judgment is appropriate is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co. Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

The United States Court of Appeals for the Sixth Circuit has held that trial courts considering a motion for summary judgment may not make findings of fact. The movant must conclusively show "that there exists no genuine issues as to a material fact and that the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1158 (6th Cir.1980) (citations omitted).

The substantive law governs the determination of which facts are material. "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 1583, 20 L.Ed.2d 569 (1968). Mere allegations or denials in the non-movant's pleadings will not meet this

burden. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

## III. ANALYSIS

Patents are entitled to a presumption of validity under 35 U.S.C. § 282, and the party asserting patent invalidity under 35 U.S.C. § 102(b) must support the assertion by facts constituting clear and convincing evidence. *In re Caveney,* 761 F.2d 671, 674 (Fed.Cir.1985) (citing *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359–60 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984)). In this case, defendant ATCC argues that the '833 and '622 patents are invalid based on alleged public use and sale of the patented invention more than one year prior to the patent application. Section 102(b) provides that an invention may not be patented if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b).

In determining whether the patents are invalid under § 102(b), the court has considered the underlying policies behind the "public use" and "on-sale" statutory bars. In *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 860 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986), the court explained that the underlying policies include: (1) discouraging removal of inventions from the public domain which the public justifiably comes to believe are freely available; (2) favoring prompt and widespread disclosure of inventions; (3) giving the inventor a reasonable amount of time following the sales activity to determine the value of a patent; and, (4) prohibiting an extension of the period for exploiting the invention. Defendant argues that the Beloit sale, plaintiff's admission that the patented method was in commercial use in 1982, and the Logan and Garden City offers invalidate the patent under § 102(b). The court considers the alleged invalidating events separately below.

## A. Beloit Sale

In the spring of 1980, Sweeney told Maxfield that Beloit High School in Beloit, Kansas, was considering installing a new track. Maxfield spoke with Superintendent John R. Bottom about the installation of the track at Derby and convinced him to contract for the installation of a track like the Derby track. Between the time the contract was first negotiated and the time of installation, however, Maxfield developed the "rake and spray" method which later became the subject of the patents-in-suit. Maxfield and Sweeney both discussed the "rake and spray" method with Bottom and convinced him to have the Beloit track installed using that method. Plaintiff Seal–Flex and Ritchie acted as joint venture partners to install the running track at Beloit High School. Plaintiff Seal–Flex supervised the installation and was responsible for quality control. Ritchie provided the crew, labor, equipment and materials. The Beloit track installation was complete in May of 1981.

The parties do not dispute that the Beloit track was made using the methods covered by the patents at issue more than one year prior to the date that the patent application was filed. Plaintiff Seal–Flex maintains, however, that the Beloit track was experimental and thus, not a § 102(b) public use or on-sale event. Defendant, on the other hand, argues that the Beloit track was not experimental and is an invalidating event under § 102(b).

The court notes that the statutory presumption of validity under 35 U.S.C. § 282 puts the burden of invalidity on the party asserting it and the burden never shifts to the patentee-plaintiff. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed.Cir.1983). However, once an alleged infringer has presented facts sufficient to establish a *prima facie* case of public use, a patentee raising the experimental use defense is obligated to come forward with some convincing evidence to the contrary sufficient to raise a genuine issue of material fact. *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1480 (Fed.Cir.1986).

Public use under § 102(b) exists when the patented invention is "used by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor." *In re Smith*, 714 F.2d 1127, 1134 (Fed.Cir.1983) (citing *Egbert v. Lippmann*, 104 U.S. 333, 336, 26 L.Ed. 755 (1881)). Where a sale is primarily for a bona fide experimental purpose to perfect the invention, however, rather than for commercial exploitation, the prior sale does not bar patent validity. *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1311 (Fed.Cir.1988); *Pennwalt Corp. v. Akzona, Inc.*, 740 F.2d 1573, 1581 (Fed.Cir.1984). In order to determine whether a prior sale is experimental or whether it is a public use which bars patent validity within the meaning of § 102(b), the court must look at the totality of the circumstances. *Sinskey v. Pharmacia Ophthalmics Inc.*, 982 F.2d 494 (Fed.Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2346, 124 L.Ed.2d 256 (1993).

To show that a public use or sale does not invalidate a patent under § 102(b), it must be shown that the activity was "substantially for purposes of experiment." *Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1564 (Fed.Cir.1987). In determining whether a prior sale or use was experimental, the court must consider "[o]bjective evidence such as the length of the test period, whether payment was made for the device, whether there was a secrecy agreement, whether progress reports were kept, whether someone other than the inventor conducted the experiments, and the overall number of tests may be considered." *Sinskey*, 982 F.2d at 498. In order to prove that the prior use was experimental, "it must be clear that the inventor kept control over his [or her] invention in the course of its testing." *In Re Hamilton*, 882 F.2d 1576, 1580 (Fed.Cir. 1989) (citing *City of Elizabeth v. American Nicholson Pavement Co.*, 97 U.S. 126, 136, 24 L.Ed. 1000 (1877)).

Plaintiff maintains that Maxfield exercised the requisite control over the experimental track by supervising its installation, regularly visiting the site and taking samples from the track. In this case, plaintiff Seal–Flex argues that the track sold to Beloit was an

experimental track which had to be installed prior to patent application in order to test the running track for durability. Due to the costs associated with installing a running track and the space required to build the track, plaintiff maintains it was not feasible to build an experimental track without the funds generated through a sale. In addition, plaintiff maintains that the track needed to be tested by a large number of athletes over a long period of time. Plaintiff also argues that it gave the Beloit School District a special two-year warranty due to the track's experimental nature.[3] In addition, plaintiff has submitted the affidavit of Ritchie employee Joe Rothwell who maintains that the track was experimental.

Defendant ATCC responds that plaintiff did not exercise control over the track, did not keep the method of installation confidential, and did not prevent others from viewing the installation of the track. Plaintiff responds that the track was installed over several months, there were few visitors to the track while it was installed, and once installation was complete, the method of installation was not ascertainable to the observer. Defendant also disputes whether plaintiff actually monitored and inspected the installation of the track.

The court notes that when the Western District of Michigan was presented with the issue of whether the sale of the track to Beloit was an experimental track, Judge Gibson found that questions of fact remained and summary judgment was not appropriate based on the sale of the track to Beloit. *Seal–Flex, Inc. v. Atlas Tracks, Inc.*, No. 92–194 at 14, 1994 WL 750605, *4 (W.D.Mich., Feb. 12, 1993). Similarly, based on the evidence presented here, the court determines that a factual question remains over whether the sale of the track to a high school in Beloit was an invalidating event or an experimental sale.

### B. *1982 Sales*

■ Defendant ATCC also argues that the '622 patent is invalid because sales of the patented method occurred in 1982, which is more than one year before the '622 application was filed. The '622 application was filed

in 1984. In support of its argument, defendant has submitted the affidavit of its expert witness. Plaintiff responds that the '622 patent is a continuation-in-part of the '833 patent application which was filed in 1982 and is therefore entitled to the filing date of the first patent application. In support of its response, plaintiff has attached the affidavit of its expert witness, a patent attorney, who states that the '622 patent is in fact a continuation-in-part of the '833 patent and is, therefore, entitled to the filing date of the parent application. Because plaintiff has come forward with facts raising questions as to whether the '622 patent is entitled to the filing date of the '833 patent, summary judgment is not appropriate based on the 1982 sales.

### C. *Logan and Garden City offers*

■ Defendant next argues that summary judgment is appropriate based on offers to sell tracks made by the patented method prior to the critical date. Patent law is well-settled that an offer to sell a completed invention is sufficient to support a rejection under § 102(b). *In re Caveney*, 761 F.2d at 675. In May, 1981, Joe Rothwell of Ritchie offered to sell a track using the patented method to the track coach of Logan High School. At that time, Rothwell had taken over for Sweeney as general manager of Ritchie. On May 26, 1991, Rothwell sent a letter to Logan track coach Kenneth Hanson thanking him for the opportunity to bid on their track project. He also sent Logan three bid proposals, one of which was for a track made according to the patented method or "just like" Beloit. In addition, in July, 1981, Rothwell visited the Beloit track with the track coach of Garden City Community College and others and discussed building the same type of track at their school. Eventually, Ritchie sold Garden City a track using the Seal–Flex patented method.

■ In determining whether the offers invoke the "on-sale" bar, the court must consider the totality of the circumstances. *King Instrument Corp.*, 767 F.2d at 860.

---

**3.** The court notes that after its patent applications were approved, Seal–Flex continued to offer two-year warranties on the sale of its patented track surfaces.

Defendant must prove by clear and convincing evidence that the patents are invalid because there was a public use or a definite sale or offer to sell more than one year prior to the patent application. *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 549 (Fed.Cir.1990).

In its initial response, plaintiff argued that the Logan and Garden City offers do not invoke the § 102(b) "on-sale" bar because the invention was not sufficiently tested at the time the offers were made. In addition, plaintiff argued that a bare offer which does not include any information on the patents-in-suit does not evidence that the subject of the patents had been offered for sale. Furthermore, plaintiff argued that the offers did not invoke the § 102(b) "on-sale" bar because they were made to those without the authority to accept them. These were the same arguments made to Judge Gibson in the Western District of Michigan. Judge Gibson found none of plaintiff's arguments persuasive and determined that the offer to Logan constituted an invalidating event. This court agrees with Judge Gibson's analysis and likewise, finds none of plaintiff's above mentioned defenses to the on-sale bar applicable.

▮ Plaintiff's argument that the invention was not sufficiently tested at the time the offers were made to invoke the on-sale bar is not persuasive. Under patent law, stating that an invention has been sufficiently tested to demonstrate that it will work for its intended purposes is equivalent to saying that it has been "reduced to practice." *See e.g., Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 839 (Fed. Cir.1984). The Federal Circuit has explicitly held that a claimed invention need not be reduced to practice to invoke the on-sale bar. *UMC Electronics Co. v. United States*, 816 F.2d 647, 656 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988). Although an offer to sell a mere concept of the invention will not invoke the on-sale bar, it need not be so perfected as to be reduced to practice. *Id.* Instead, the court must consider the totality of the circumstances surrounding the offer to sell to determine whether the on-sale bar is invoked. *Id.* Considering that the Beloit track was completed at the time the Logan offer was made, it is clear that the invention was not a mere concept at the time the offers were made. In fact, at his deposition, Rothwell testified that he believed the invention was "commercially feasible." Because the patented method had been extensively developed at the time the offers were made, the court determines that the invention was sufficiently complete as to invoke the on-sale bar.

▮ Plaintiff next argues that it is not clear that the track offered to Logan and Garden City was the product of the patented method. Plaintiff is correct that bare, unexplained offers, which cannot be shown to be of the patented invention, may be insufficient to defeat a patent. *King Instrument Corp.*, 767 F.2d at 860. In determining whether an offer of the new invention was made, the court must consider the totality of the circumstances. *Id.* In this case, it is undisputed that offers were made to sell tracks "just like" Beloit. The Beloit track embodied the patented method. Thus, there is no factual dispute that offers for sale of the patented invention were made.

▮ Moreover, plaintiff's argument that the offers do not invoke the on-sale bar because they were made to those without the ability to accept the offers lacks merit. Rothwell offered to sell the track to the Garden City track coach and athletic director and the Logan High School track coach. Plaintiff relies on Kansas contract law to support its argument that the offers were not legitimate. Plaintiff argues that the coaches lacked the statutory authority to make a binding contract on behalf of the schools, thus, the offers were illusory. However, an offer does not have to meet all of the requirements necessary for a formal offer under contract law principles to be sufficiently definite to invoke the on-sale bar. *RCA v. Data General Corp.*, 887 F.2d 1056, 1062 (Fed.Cir. 1989). An offer can be considered definite under patent law principles as long as it is not a "merely indefinite or nebulous discussion about a possible sale." *Id.* In this case, it is clear, that the offer to the Logan track coach was not indefinite or nebulous. The Logan offer was a detailed written proposal. It is clear that although the track coach

would not sign the dotted line, the coach was in a position to convince those authorized to purchase the track to accept the bid. Thus, the court finds that the offer to sell to the Logan track coach was a definite offer to sell under applicable patent law.

In its supplemental response filed after the stay was lifted, plaintiff argues that the offers do not invalidate the patents because the offers were made by Joe Rothwell, an alleged third party not in privity with the inventor, to sell a product according to a patented method and not the patented method itself. This argument was not presented to Judge Gibson at the time he decided defendants' motion for summary judgment and issued his order declaring the patents invalid.[4]

In support of its new argument, plaintiff has submitted the affidavits of Maxfield and Rothwell which state that Rothwell did not possess the method invention at the time he offered to sell the tracks to Logan and Garden City, and thus could not have been offering the method invention for sale. These affidavits do not raise genuine issues of material fact. At his deposition one year before the affidavit was made, Maxfield admitted that he knew Ritchie was offering tracks constructed with the patented method for sale in May, June, and July, 1981. Maxfield testified that he had no objection to Ritchie offering to sell the tracks. By Maxfield's own deposition admissions, at the time the offers were made, Ritchie and Seal–Flex had a good business relationship. In addition, Ritchie had already built one track according to the Seal–Flex method. Plaintiff admits that it continued to negotiate with Ritchie for another deal which was later consummated allowing Ritchie to build tracks according to the method invention. Furthermore, at Rothwell's earlier deposition, he admitted

that he offered to sell a track made using the patented method to Logan. Under the facts presented, there is no genuine question that Rothwell was offering to sell the patented invention.

In support of its new argument against patent invalidity, plaintiff relies on *In re Caveney*, 761 F.2d 671 (Fed.Cir.1985). In that case, the court set forth an exception to the general rule that "sales or offers by one person of a claimed invention will bar another party from obtaining a patent if the sale or offer to sell is made over a year before the latter's filing date." *Id.* at 675. The court explained that a sale of a product made by a patented method by one other than the patentee or patent applicant does not raise the "on-sale" bar where the patented method remains secret. The court stated:

> An exception to this general rule exists where a patented method is kept secret and remains secret after a sale of the unpatented product of the method. Such a sale prior to the critical date is a bar if engaged in by the patentee or patent applicant, but not if engaged in by another.

*Id.* at 675. The policy behind this exception is that early disclosure is favored in patent law. Patent law prefers a later inventor who promptly discloses it over an earlier inventor who keeps an invention secret from the public for his or her own commercial gain. *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed.Cir.1983), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). In *W.L. Gore & Assoc., Inc.*, the issue presented to the court was whether a patent was invalid because an earlier inventor existed, who never applied for a patent but concealed the subject of the patent as a trade secret, and used the patented process for commercial gain more than a year before

---

4. The issue was later presented to Judge Gibson when the Court of Appeals for the Federal Circuit permitted plaintiffs to file a motion to vacate with the district court without remanding the matter. The Federal Circuit stated that if Judge Gibson indicated that he would grant plaintiff's motion to vacate then it would remand the matter to the district court. Judge Gibson issued an advisory opinion notifying the Federal Circuit that he would not grant plaintiffs' motion for relief under Rule 60(b) if the Court of Appeals

remanded the matter. In that thirteen page advisory opinion, Judge Gibson noted that the court did not distinguish between a process invention and a product produced by a process invention because plaintiffs had not raised the issue below. Although Judge Gibson noted that the issue might be relevant, he found no good cause for plaintiffs' failure to raise the issue earlier and thus, determined that it would not be grounds for vacating his prior order. *Seal–Flex, Inc. v. Atlas Tracks, Inc.*, No. 92–194, 1994 WL 750605 (W.D.Mich. Jan. 10, 1994) at 11–14.

the patentee filed his patent application. The court held that the prior secret use of the patented method did not bar a later inventor from patenting the invention, although the prior secret use would bar the earlier inventor from obtaining a patent. The Federal Circuit explained:

> Early public disclosure is a linchpin of the patent system. As between a prior inventor who benefits from a process by selling its product but suppresses, conceals, or otherwise keeps the process from the public, and a later inventor who promptly files a patent application from which the public will gain disclosure of the process, the law favors the latter.

*Id.* at 1551.

Similarly, in *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147 (Fed. Cir.1983), the Federal Circuit stated that when the inventor of a method or his or her assignee offers to sell a product produced by the method of the invention before the critical date, the inventor forfeits the right to a patent on the method. The "forfeiture" rule enforces the policy behind § 102(b) by precluding "attempts by the inventor or his assignee to profit from commercial use of an invention for more than a year before an application for patent is filed." *Id.* On the other hand, "[w]here a method is kept secret, and remains secret after a sale of the product of the method, the sale will not, of course, bar another inventor from the grant of a patent on that method." *Id.*

The *In re Caveney* exception is inapplicable to this action. It is clear that Rothwell was not offering for sale the invention of a third-party who was maintaining the invention as a trade secret, but was offering to sell a track produced according to Maxfield's invention. Rothwell was an employee of Ritchie. In the fall of 1980, Ritchie and plaintiff agreed to act as joint venture partners to install the Beloit track. Ritchie constructed the Beloit track using the patented process

according to plaintiff's specifications. In addition, Ritchie and Maxfield negotiated a license agreement which was finalized in 1982 allowing Ritchie to sell tracks using Maxfield's patented invention.

Rothwell offered to sell running tracks covered by the patents more than one year prior to Maxfield's patent application. These offers to sell render the patents invalid under § 102(b). Contrary to plaintiff's arguments, the *In re Caveney* exception does not apply. Unlike the facts presented in *W.R. Gore & Assoc., Inc.*, upon which the *"In re Caveney"* exception is based, Rothwell was not acting on behalf of some earlier inventor who concealed a patented process as a trade secret for commercial gain. Rothwell offered plaintiff's invention for sale. In this case, there is one inventor, not two, and the purpose behind the *In re Caveney* exception has no relevance here. Because the *In re Caveney* exception is inapplicable in this case, the court finds that the offers to sell to Logan and Garden City invoke the on-sale bar and invalidate the patents.

### IV. CONCLUSION

For the reasons explained above, the court finds that a definite offer to sell a track constructed from the patented process was made to officials in Logan, Kansas and Garden City, Kansas at least one year prior to the critical date. Thus, the patent is invalid under § 102(b). Accordingly,

IT IS ORDERED that defendant ATCC's motion for partial summary judgment declaring the patents invalid hereby is GRANTED.[5]

### ORDER GRANTING DEFENDANT'S MOTION FOR ENTRY OF FINAL JUDGMENT, DENYING PLAINTIFF'S MOTION TO MODIFY THE COURT'S PRIOR ORDER AS MOOT AND STAYING PROCEEDINGS

This is a patent infringement action involving two patents which cover a method of

---

**5.** This ruling entitles defendant ATCC to judgment on all claims arising from plaintiff's amended complaint. Plaintiff's motion for summary judgment on the issue of patent infringement is now moot. Defendant is also entitled to judgment on Count I of its counterclaim filed on May 27, 1992, which asks this court to declare the patents invalid and unenforceable and that defendant's conduct does not infringe upon the patents in the suit. Thus, the only remaining claims in this litigation are Count II of defendant's counterclaim which alleges anti-trust violations and Count III of defendant's counterclaim which alleges unfair competition.

installing rubber athletic tracks. On September 15, 1994, the court granted defendant's motion for partial summary judgment and declared the patents invalid. The case remained open because of defendant's two counterclaims for antitrust violations (count II) and unfair competition (count III). Plaintiff Seal–Flex, Inc. (Seal–Flex) has filed a motion to amend the order to certify it for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defendant Athletic Track and Court Construction (ATCC) does not oppose the motion but argues that there is no need to resort to the certification requirements of § 1292(b) because final judgment may be entered pursuant to Fed. R.Civ.P. 54(b).

An order is certifiable under Rule 54(b) if it disposes of at least one claim with the degree of finality required to satisfy the standards for appeal set forth in 28 U.S.C. § 1291. *Rudd Constr. Equip. Co. v. Home Ins. Co.*, 711 F.2d 54, 56 (6th Cir.1983). The order must terminate all issues presented in at least one claim so that nothing remains to be done other than enforcement of the judgment. *Id.* In this case, the court's order terminated all issues presented in plaintiffs' amended complaint. Plaintiffs' amended complaint alleged claims of patent infringement only. The court's order granting defendant's motion for partial summary judgment found the patents at issue to be invalid and unenforceable. Thus, judgment is final as to all claims alleged in plaintiffs' amended complaint.

Under Rule 54(b), final judgment may be entered in an action involving multiple claims when there is "no just reason for delay."[1] In determining whether there is "no just reason for delay," the court considers the following factors:

(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that appellate review might be mooted by future developments; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; and (4) the costs of delay.

*Local Union No. 1812, United Mine Workers v. BethEnergy Mines, Inc.*, 992 F.2d 569, 572 (6th Cir.1993); *General Acquisition v. GenCorp, Inc.*, 23 F.3d 1022, 1030 (6th Cir.1994). Under these factors, the court finds that final judgment should enter as to plaintiffs' amended complaint.

All claims against defendant ATCC have been fully litigated. There is no possibility that appellate review might be mooted by future developments in this court. Furthermore, there is no possibility that the Court of Appeals for the Federal Circuit would be obliged to consider the issue of patent validity again. In sum, this court's ruling that the patents are invalid and unenforceable is a final judgment and there is no just reason why the issue of patent validity should not be immediately appealable.

Because final judgment shall be granted pursuant to Rule 54(b), plaintiffs' motion for certification for interlocutory appeal is moot. Accordingly,

IT IS ORDERED that defendant's motion for entry of final judgment under Rule 54(b) hereby is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion to amend the order to certify it for immediate appeal pursuant to § 1292(b) hereby is DENIED AS MOOT.

IT IS FURTHER ORDERED that the action is stayed as to defendant's counterclaims Count II and Count III pending resolution of plaintiff's appeal to the Court of Appeals for the Federal Circuit.

1. Rule 54(b) provides:
   When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.