**CODE ALARM, INC., Plaintiff,**

v.

**DIRECTED ELECTRONICS, INC., Defendant.**

**CODE ALARM, INC., Plaintiff,**

v.

**MAGNADYNE CORPORATION, Defendant.**

Nos. 93–CV–71862–DT, 93–CV–72998–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 11, 1996.

John G. Chupa, Madison Hgts., MI, for Plaintiff.

Ernie L. Brooks, Kevin J. Heinl, A. Frank Duke, Brooks & Kushman, Southfield, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on defendants' Motion for Summary Judgment. Plaintiff has filed a response, to which defendants have replied. Additionally, plaintiff and defendants have filed supplemental briefs. The facts and legal arguments are adequately presented in the briefs, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D.Mich.Local R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, defendants' motion is GRANTED.

## I. BACKGROUND

This case arises out of enforcement of a patent for a vehicle anti-theft/security system. The vehicle security system patent in question is U.S. Patent 5,049,867 (hereinafter " '867" or "patent").

Code Alarm, plaintiff herein, filed a patent application on November 30, 1988, which disclosed and claimed a vehicle security system with a remote transmitter used in conjunc-

tion with a receiver capable of "learning" a signal from a new remote transmitter.

A remote transmitter is a component of a vehicle security system, usually carried on a key chain, that is used to arm and disarm the system. When a remote transmitter is broken or lost, the security system dealer or installer originally had to code a new transmitter to use a code which the receiver component of the system recognizes.

Plaintiff, defendants and Clifford Electronics, Inc. (hereinafter "Clifford"), a non-party to this action, sought to minimize this burden by creating receivers which could "learn" codes from new transmitters. Plaintiff filed a patent application for the technology, resulting in the '867 patent, and claims that defendants are in violation of that patent.

Defendants contend that the patent is invalid under 35 U.S.C. § 102(b), based on the existence of commercial sales by Clifford of a similar product more than one year prior to Code Alarm's November 30, 1988, application. Defendant Directed Electronics, Inc., originally filed a Motion for Summary Judgment on September 7, 1993. The Court denied the original motion in its December 17, 1993 Order. The instant Motion for Summary Judgment was filed on June 1, 1994, after the close of discovery.

The entire instant case was stayed by Order of the Court on July 28, 1994, pending the outcome of an appeal to the Federal Circuit of the United States International Trade Commission's (hereinafter "ITC") determination that the '867 patent is invalid due to commercial sales by Clifford. On September 19, 1995, the Federal Circuit affirmed the ITC determination.

## II. OPINION

### A. Summary Judgment

Defendants brought this motion for summary judgment pursuant to Fed.R.Civ.P. 56. Under Rule 56(c), summary judgment is appropriate, after adequate time for discovery, only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See e.g. Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). The Supreme Court has stated that the standard the Court must apply in determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson, supra,* at 252, 106 S.Ct. at 2512.

In applying this standard, the Court must view all materials offered in support of a motion for summary judgment in the light most favorable to the non-moving party. *Id.,* at 248, 106 S.Ct. at 2510. Where the non-moving party has failed, however, to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant and thus summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In *Anderson,* the Supreme Court also noted that "[b]y its very terms, the standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.,* at 248, 106 S.Ct. at 2510 (emphasis in original). Where "the moving party has carried its burden under 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted); *see also Celotex, supra.*

## B. Patent Law Standards

Defendants have moved for summary judgment that U.S. Patent '867 is invalid under 35 U.S.C. § 102(b), based upon alleged sales activities of a third party, Clifford, of a vehicle security system known as the Intelliguard 500. To prevail, defendant must demonstrate through clear and convincing evidence that "the complete invention claimed [was] embodied in or obvious in view of the item offered for sale." *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 859–60 (Fed.Cir. 1985).

To invoke the on-sale bar of § 102(b), the party asserting the bar must prove two elements: (1) that there was a sale of, or an offer to sell, the claimed invention more than one year before the filing date of the patent application; and (2) that the subject matter sold or offered for sale fully anticipated each patent claim or would have rendered each claim obvious. *UMC Electronics Co. v. United States*, 816 F.2d 647, 656 (Fed.Cir.1987). Whether an invention has been on sale is a question of law. *Id.*, at 657.

## C. Analysis

### 1. Preclusive Effect of the ITC's Decision

In the Court's July 28, 1994 Order staying the instant action, the Court stated that "[w]hile a determination by the ITC has no preclusive effect on this Court, a determination by the Federal Circuit does." July 28, 1994 Order at 3. The Court has since reconsidered the issue.

The very question of the preclusive effect of an ITC determination affirmed by the Federal Circuit was addressed in *In Re Convertible Rowing Exerciser Patent Litigation*, 721 F.Supp. 596 (D.Del.1989) (hereinafter *"Convertible 1"*). That court found that such a determination by the ITC, even after being affirmed by the Federal Circuit, did not preclude adjudication of the validity of the same patent by a federal district court pursuant to its jurisdiction over patent matters. *Id.*, at 604.

Although defendants' original brief proposed giving preclusive effect to the ITC's ultimate determination on the '867 patent's validity, in their supplemental brief to the instant motion, defendants state "[they] do not assert collateral estoppel or res judicata since this would be contrary to the Federal Circuit's rulings." Defendants' Supplemental Brief 4. Rather, defendants argue that preclusive effect should only be given to the ITC's purely factual determinations. In support of their position defendants cite *In Re Convertible Rowing Exerciser Patent Lit.*, 814 F.Supp. 1197 (D.Del.1993) (hereinafter *"Convertible 2"*). In *Convertible 2*, the Delaware court found that while the ITC's legal determination, affirmed by the Federal Circuit, as to the validity of the patent in issue had no preclusive effect, the ITC's factual findings essential to its determination would be given preclusive effect in the district court. *Id.*, at 1204.

Defendants' supplemental brief identifies three ITC factual findings which defendants argue should be given preclusive effect:

(1) Prior to November 30, 1987, numerous units of the security system called the Intelliguard 500 were sold by Clifford in the United States,

(2) the Intelliguard 500 units had code learning regardless of any battery drain problems, and

(3) the named inventor in the '867 patent, Peter J. Stouffer, was in no way connected with the Intelliguard 500 units sold by Clifford.

Defendants' Supplemental Brief 5–6.

The Court finds that in accordance with the cases cited by both parties, neither res judicata nor collateral estoppel should be applied in the instant case. As to the ITC's three findings identified above, the Court need not determine whether to give them preclusive effect. Rather, the Court hereby makes an independent finding based on all the materials properly before it that there is no genuine issue of material fact as to the following three matters:

(1) the Intelliguard 500 was sold prior to the relevant date of November 30, 1987,

(2) the Intelliguard 500 was capable of code learning, and

(3) Peter J. Stouffer had no connection to the Intelliguard 500.

*See* Defendants' Brief Ex. B–C.

## 2. Reduction to Practice

■ Plaintiff claims that § 102(b) does not apply in the instant case in that the code learning function of the Intelliguard 500 was not "reduced to practice" at the time of the sales by Clifford. Plaintiff alleges that at the time of the prior sales, the Intelliguard 500 had significant problems with battery drain, and was accordingly "inoperable" for the purposes of an on-sale bar. Although "reduction to practice" is not a *per se* requirement of an on-sale bar, the stage of an invention's development is an important factor in determining whether a prior offer or sale falls within the ambit of § 102(b). *UMC Electronics, supra*, at 656, *Seal–Flex, Inc. v. Athletic Track and Court Construction*, 870 F.Supp. 753, 758.

■ The Court finds that the Intelliguard 500's alleged battery drain problem did not render it inoperable such that its prior sales fall outside of § 102(b). In *Barmag Barmer Maschinenfabrik v. Murata Machinery, Ltd.*, 731 F.2d 831 (Fed.Cir.1984), the court held:

> There is no dispute that reduction to practice requires that an invention be "sufficiently tested to demonstrate that it will work for its intended purpose." On the other hand, "[t]here is no requirement for a reduction to practice that the invention, when tested, be in a commercially satisfactory stage of development."

*Id.*, at 838 (citations omitted). The Court finds that to classify the Intelliguard 500 as "inoperable" based on an alleged battery drain problem would be to require that the invention be "commercially satisfactory" as opposed to simply "work for its intended purpose." Accordingly, being no genuine factual dispute that the Intelliguard 500 actually exhibited a code learning function, the Court finds that the code learning function was "reduced to practice" for the purposes of an on-sale bar despite the alleged battery drain problem.

## 3. Experimental Use Doctrine

Plaintiff next argues that any sales by Clifford of the Intelliguard 500 prior to the critical date were experimental and accordingly cannot bar the '867 patent. Plaintiff's Response 10. Defendants cite *In Re Hamilton*, 882 F.2d 1576, 1581 (Fed.Cir.1989), for the proposition that the experimental use doctrine only provides an exception to the § 102(b) on-sale bar where the experimental use is under the control or surveillance of the inventor named in the patent in suit.

> The experimental use doctrine operates in the inventor's favor to allow *the inventor* to refine his invention or to assess its value relative to the time and expense of prosecuting a patent application. If it is not the inventor or someone under his control or "surveillance" who does these things, there appears to us no reason why he should be entitled to rely upon them to avoid the statute.

*Id.*, at 1581. Plaintiff responds that *In Re Hamilton* does not require that the relevant "inventor" be the one named in the patent in suit. Rather, plaintiff argues that experimental use by the inventor of the Intelliguard 500, regardless of whether the inventor is the same as the named inventor in the patent in suit, creates an exception to the on-sale bar.

■ The Court agrees with plaintiff that the facts of *In Re Hamilton* are distinguishable from those of the instant case. Here, the inventor named in the '867 patent, Peter J. Stouffer, had nothing to do with the development or sale of the Intelliguard 500. In contrast, Hamilton involved a single inventor who relinquished control of his invention to a third party and then attempted to argue that the third party's use constituted experimental use. However, *In Re Hamilton* cites *Magnetics, Inc. v. Arnold Engineering Co.*, 438 F.2d 72, (7th Cir.1971) in support the proposition that "the inventor" must maintain control over the experimental use for the experimental use doctrine to apply. Like the case at bar, *Magnetics* involved independently developed products and different inventors. The Magnetics court held that the experimental use doctrine was not available where the inventor named in the patent in

suit did not exercise control over the alleged experimental use. *Id.,* at 74. Accordingly, the Court finds that whereas Peter J. Stouffer did not exercise any control or surveillance over the prior sales of the Intelliguard 500, the experimental use doctrine is inapplicable and plaintiff's argument must fail.

■ Alternatively, the Court finds that the experimental use doctrine does not apply in view of the Court's determination that the Intelliguard 500 was reduced to practice at the time of the prior sales. While the parties do not address the issue, the Federal Circuit has recently held that "experimental use does not defeat the on-sale bar once the invention has been reduced to practice." *Atlantic Thermoplastics Co., Inc. v. Faytex Corp.,* 5 F.3d 1477 (Fed.Cir.1993) (citing *RCA Corp. v. Data General Corp.,* 887 F.2d 1056, 1061 (Fed.Cir.1989)). Therefore, on this alternative basis, plaintiff's argument must fail.

### 4. Anticipated or Obvious

In order to prevail in its argument for an on-sale bar, defendants must show that the subject matter sold or offered for sale fully anticipated each patent claim or would have rendered each claim obvious. Plaintiff contends that the Intelliguard 500 did not fully anticipate the patent's claim as to the utilization of a "discrete coded signal." '867 Patent Claim 1. Specifically, plaintiff contends that the use of the term "discrete coded signal" in its claim encompasses a limitation requiring the use of a coded signal with a "button signature." Whereas each of the Intelliguard 500's transmitters has a set code which is fixed in relation to a specific button on the transmitter, plaintiff alleges that it has claimed a limitation requiring that the transmitter be button programmable so that the signal reflects the pressing of a particular button or series of buttons. In support of their respective positions, the parties offer conflicting "expert" declarations construing the meaning of "discrete coded signal" as used in the patent's claims.

■ The Federal Circuit has held,

Claim interpretation is a question of law amenable to summary judgment, and dis-

agreement over the meaning of a term within a claim does not necessarily create a *genuine* issue of material fact. The terms in a claim are given their ordinary meaning to one of skill in the art unless it appears from the patent and file history that the terms were used differently by the inventors. Thus, where a disputed term would be understood to have its ordinary meaning by one of skill in the art from the patent and its history, extrinsic evidence that the inventor may have subjectively intended a different meaning does not preclude summary judgment. In such instance, there is no *genuine* dispute respecting a material fact.

*Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387 (Fed.Cir.1992) (citations omitted) (emphasis in original). The Federal Circuit has also held,

a patentee can be his own lexicographer provided the patentee's definition, to the extent it differs from the conventional definition, is clearly set forth in the specification.

*Beachcombers v. WildeWood Creative Products, Inc.,* 31 F.3d 1154 (Fed.Cir.1994). Similarly, "[w]here a specification does not *require* a limitation, that limitation should not be read from the specification into the claims." *Intel Corp. v. U.S. Int'l Trade Comm'n,* 946 F.2d 821, 836 (Fed.Cir.1991) (emphasis in original) (quoting *Specialty Composites v. Cabot Corp.,* 845 F.2d 981, 987 (Fed.Cir.1988)).

■ As to the term "discrete coded signal" in the instant patent claims, the Court agrees with the decision of the ITC Administrative Law Judge that "[t]here is nothing in the common meaning of the words . . . which requires the use of a so-called 'button signature.'" Defendants' Brief Ex. A at 16. Having reviewed all the materials properly before the Court, the Court finds that there is no genuine issue of material fact as to whether the '867 patent's claims can be interpreted to require a "button signature."

■ The language of the '867 patent's specification compels the above result. As noted by the Administrative Law Judge, the '867 patent states:

In one embodiment, a first discrete code is hardwired in a transmitter and provides one code out of up to 65,536 separate codes which is specific to that transmitter. In another embodiment, the transmitter means includes a control means and a memory means for storing the discrete code.

'867 Patent col. 2, lines 49–54. The use of the term "discrete code" to denote a code which is "hardwired" into a transmitter embodiment strongly suggests that the term not be given the special meaning suggested by the plaintiff. According to plaintiff, the "button signature" limitation allegedly encompassed within the meaning of "discrete coded signal" requires that the button functionality be programmable rather than preset. *See* Second Declaration of Peter J. Stouffer ¶ 5. In the language quoted above, the patent specification clearly uses the term "discrete code" to represent a preset code. Such usage, as well as the patentee's failure to "clearly set forth in the specification" a differing definition, forecloses upon plaintiff's argument. Accordingly, the Court finds that the Intelliguard 500 anticipates every claim of the '867 patent. Therefore, under 35 U.S.C. § 102(b), the '867 patent is invalid.

## III. CONCLUSION

For the reasons stated above, the Court finds that no genuine issue of material fact exists with regard to each of the elements necessary for rendering the '867 patent invalid under 35 U.S.C. § 102(b). Plaintiff has failed to demonstrate a genuine issue of material fact as to whether the Intelliguard 500 was sold prior to the relevant date, whether Peter J. Stouffer had any connection with the Intelliguard 500, and whether the Intelliguard 500 anticipated each claim of the '867 patent.

Accordingly, IT IS ORDERED that defendants' instant Motion for Summary Judgment is GRANTED and plaintiff's actions are DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

*JUDGMENT*

IT IS ORDERED AND ADJUDGED that pursuant to this Court's Order dated March 11, 1996, plaintiff's action is DISMISSED.