**SEAL–FLEX, INC., Plaintiff–Appellant,**

v.

**ATHLETIC TRACK AND COURT CONSTRUCTION, Defendant/Cross–Appellant.**

Nos. 95–1083, 95–1160.

United States Court of Appeals, Federal Circuit.

Oct. 24, 1996.

Thomas N. Young, Young, MacFarlane & Wood, P.C., Troy, MI, argued, for plaintiff-appellant. With him on the brief, was Donna L. Berry.

Owen E. Perry, Reising, Ethington, Barnard & Perry, Troy, MI, argued, for defendant/cross-appellant. With him on the brief, was Richard W. Hoffman.

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

Opinion for the court filed by Circuit Judge NEWMAN. Separate opinion, concurring in part and concurring in the result, filed by Circuit Judge BRYSON.

PAULINE NEWMAN, Circuit Judge.

Seal–Flex, Inc. appeals the summary judgment of the United States District Court for the Eastern District of Michigan [1] invalidating United States Patents No. 4,474,833 (the '833 patent) and No. 4,529,622 (the '622 patent), both entitled "Method for Constructing All–Weather Surface" and assigned to Seal–Flex. The invalidation was based on the on-sale bar of 35 U.S.C. § 102(b). Athletic Track and Court Construction (ATCC) cross-appeals the denial of its request for attorney fees.

We conclude that summary judgment of invalidity was improperly granted. The judgment is reversed and the matter is remanded for further proceedings. The district court's denial of attorney fees is affirmed.

## BACKGROUND

The inventor, Marvin Maxfield, was in the asphalt paving business. He became interested in the structure of all-weather athletic running track, and experimented with various track formulations, their composition and method of installation. In 1979 Maxfield, in association with Ritchie Paving Co. (also Ritchie Tennis & Track, all herein "Ritchie"), installed an outdoor running track at Derby High School in Wichita, Kansas. The Derby installation required extensive repairs after the first winter; Maxfield called it "the Derby High School disaster."

Maxfield continued to work on improving his formulations and methods, and in the fall of 1980 he and Ritchie undertook to install an athletic track at Beloit High School in Beloit, Kansas, using a new formulation and procedure that Maxfield had developed in light of the failures and repairs at Derby. Maxfield had spread two layers of asphaltic emulsion and rubber for the Beloit track when the mixture began to flake and chalk. This was attributed to the cold weather, and construction was suspended for the winter. Installation was resumed in March 1981, and completed in May 1981. Maxfield stated that he

gave an extended warranty for the track due to the general uncertainty as to how the track would perform under conditions of use and in the extremes of Kansas weather.

Through the summer of 1981 and the following winter Maxfield regularly visited the Beloit site. He took samples of the track to determine how it was enduring the weather cycles and the conditions of use by the Beloit High School athletes. Maxfield stated that by the spring of 1982 he was satisfied with the performance of the track. On August 23, 1982 his patent application was filed, and duly issued as the '833 patent. The '622 patent is a continuation-in-part of the '833 patent. Claim 1 of the '622 patent summarizes the method:

1. A method for constructing an activity mat over a foundation comprising the steps of:

spreading an asphaltic tack coating over the foundation surface;

spreading a first uniform layer of particulate rubber over the tack coating;

spreading a second asphaltic coating over the first layer of rubber;

spreading a second uniform layer of particulate rubber over said second asphaltic coating;

then, in sequence, first applying a liquid mixture containing styrene butadiene and water to the preceding rubber layers in sufficient quantity to coat substantially all rubber particles of said layers,

then air drying said applied mixture until substantially no liquid is visible,

then spreading a succeeding uniform layer of particulate rubber uniformly over the preceding layers;

continuing the aforesaid sequential application of styrene butadiene and water mixture, air drying and spreading of uniform layers of rubber until the approximate desired thickness for the mat is achieved; and

applying a coat of sealing material over the top layer of rubber particles.

---

1. *Seal-Flex, Inc. v. Athletic Track and Court Construction*, 870 F.Supp. 753, 32 U.S.P.Q.2d 1676

(E.D.Mich.1994).

ATCC moved for summary judgment of invalidity on the ground that the patented invention had been in public use and had been sold, based on the Beloit High School installation. Alternatively, ATCC charged that the invention was on sale based on certain activities of Ritchie employee Joe Rothwell shortly after completion of installation of the Beloit track in May 1981, before the "critical date" of August 23, 1981 (one year before the '833 patent's filing date).

With respect to the asserted public use and sale at Beloit the district court denied summary judgment, holding that "based on the evidence presented here, the court determines that a factual question remains over whether the sale of the track to a high school in Beloit was an invalidating event or an experimental sale." That ruling is not appealed, and is not appealable.

However, the district court held that an on-sale bar accrued soon after the Beloit installation, when in May 1981 Joe Rothwell showed the Beloit track to the coach of Logan High School, and in July 1981 to personnel of the Garden City Community College, all before the critical date of August 23, 1981. There was evidence that Rothwell offered Logan High School a choice of three tracks including one "like Beloit." Seal–Flex states that at the time of Rothwell's contacts with these schools the Beloit track was only a few days or weeks old, that it was not known whether it would perform satisfactorily under actual conditions of weather and use, and that an unconditional offer to sell a completed invention was not authorized and not made. Thus Seal–Flex argues that undisputed facts did not support the accrual of the on-sale bar before the critical date.

Citing *UMC Electronics Co. v. United States*, 816 F.2d 647, 2 USPQ2d 1465 (Fed. Cir.1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988), the district court deemed it not material whether the Beloit track was still undergoing testing and evaluation, for "[t]he Federal Circuit has explicitly held that a claimed invention need not be reduced to practice to invoke the on-sale bar." The district court observed that Maxfield's invention "was not a mere concept," and that Rothwell believed that it was "com-

mercially feasible." The court held that "[b]ecause the patented method had been extensively developed at the time the offers were made, the court determines that the invention was sufficiently complete as to invoke the on-sale bar." Seal–Flex states that this was an incorrect legal standard, and that on the correct standard summary judgment should not have been granted.

DISCUSSION

Summary judgment may be granted when no material question of fact is in dispute, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986), or when it is shown that the nonmovant can not prevail on its version of the facts, thus rendering a trial futile. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose is to avoid a clearly unnecessary trial). The party moving for summary judgment bears the burden of identifying the evidence that demonstrates the absence of a disputed material issue of fact and establishes that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law. *Id.* at 322–24, 106 S.Ct. at 2552–53.

■ On appellate review the court will independently determine whether the standards for the grant of summary judgment have been met, viewing the evidence and drawing factual inferences favorably to the party opposing the motion. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1571, 18 USPQ2d 1001, 1005 (Fed.Cir.1991); *Watkins v. Northwestern Ohio Tractor Pullers Assn.*, 630 F.2d 1155, 1158 (6th Cir.1980). Seal–Flex argues that disputed material facts were improperly found adversely to it upon summary judgment, and that incorrect law was applied.

■ There was conflicting evidence concerning the nature of the commercial relationship between Maxfield and Ritchie and its employees, and concerning whether an offer of sale was made by Ritchie's employee Rothwell with Maxfield's authorization. For the reasons we shall discuss, we conclude that the district court erred in its application of the law of the on-sale bar of 35 U.S.C. § 102(b), for if in fact the Beloit track required evaluation under actual conditions of weather and use in order to determine whether it would be satisfactory for its intended purpose, then it could not be held as a matter of law that contacts with potential future customers started the one-year bar during that evaluation period. Material factual issues included whether such evaluation was reasonably necessary and whether the period of evaluation was reasonable in view of the nature of the invention; if these facts were resolved in favor of Seal–Flex, then summary judgment adverse to Seal–Flex was not properly granted.

■ The district court declined to consider these factors because "the patented method had been extensively developed." However, the issue is not how much development had already been done, but whether the invention was in fact complete and was known to work for its intended purpose. If it was not yet known whether the patented method would produce a satisfactory all-weather surface, the appropriateness of determining the track's durability must be considered in deciding whether a completed invention had been offered for sale. It was incorrect to hold, as a matter of law, that the on-sale bar accrued because "the invention was sufficiently complete," although it had not yet been determined whether the method did in fact produce an all-weather surface.

Section 102 of Title 35 provides that a person is entitled to a patent unless—
(b) the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

The on-sale bar of § 102(b) represents a balance of the policies of allowing the inventor a reasonable amount of time to ascertain the commercial value of an invention, while requiring prompt entry into the patent system after sales activity has begun. *See Envirotech Corp. v. Westech Eng'g, Inc.*, 904 F.2d 1571, 1574, 15 USPQ2d 1230, 1232 (Fed. Cir.1990) (discussing public policies). Thus the statute limits the period of commercial sale or offers of sale of an invention to one year, before the patent application must be filed or be forever barred. However, the policy embodied in § 102(b) does not require that the one-year period start to accrue on an invention that is not yet known to work satisfactorily for its intended purpose. Precedent illustrates a variety of factual situations wherein contacts with potential customers before an invention was completed did not start the accrual of the on-sale bar period. *See, e.g., Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269, 20 USPQ2d 1746, 1750 (Fed.Cir.1991) (joint development between customer and supplier did not start the critical date); *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 622–23, 225 USPQ 634, 639–40 (Fed.Cir.1985) (solicitation of customers for an invention undergoing technical development was not an on-sale event). In *Manville Sales v. Paramount Sys.*, 917 F.2d 544, 551, 16 USPQ2d 1587, 1592 (Fed.Cir.1990), the court held that when performance in an outdoor environment was necessary to the purpose of an invention, then testing to determine the invention's durability under outdoor conditions did not trigger a public use bar. *Cf. City of Elizabeth v. American Nicholson Pavement Co.*, 97 U.S. 126, 24 L.Ed. 1000 (1877) (testing in public under actual conditions of use was required to establish the efficacy of the invention, and was not an invalidating public use).

■ The law of § 102(b) is an implementation of the policy that if a patent is to be sought it must be applied for within a reasonable time after a completed invention has been placed in commerce. It is well recognized that an inventor's development of new technology may overlap with the ascertainment of market interest; indeed, market development often accompanies technical development, particularly in the latter phases of completion of an invention. Whether an incomplete invention reasonably requires eval-

uation under actual conditions of use is a circumstance to be considered. *See Manville Sales,* 917 F.2d at 549–50, 16 USPQ2d at 1591 ("In order to determine whether an invention was on sale or in public use, we must consider how the totality of the circumstances comports with the policies underlying the on sale and public use bars.").

In *Baker Oil Tools, Inc. v. Geo Vann, Inc.,* 828 F.2d 1558, 1564, 4 USPQ2d 1210, 1214 (Fed.Cir.1987), the court summarized various criteria that may be relevant to the determination of whether an invention had been completed and shown to work for its intended purpose at the time of a possible public use or on sale event. These criteria include the facts of whether the tests or evaluations that were conducted were reasonably needed to demonstrate the efficacy of the invention; the length of the evaluation period in relation to the nature of the invention; whether testing was systematically performed; whether the evaluation was done by or on behalf of the inventor; whether records were kept; whether payment was received; and other circumstances that illuminate the nature of the activity engaged in before the critical date. *See also Continental Can,* 948 F.2d at 1269, 20 USPQ2d at 1750 (summarizing criteria to be considered). The policy of the on-sale bar does not tolerate a prolonged period of "evaluation" while the inventor is commercially exploiting the invention. In applying the standard of the totality of the circumstances[2] it is necessary to consider the purpose of and the need for the testing and evaluation period.

The period here at issue is the few days or weeks between completion of the installation at Beloit High School in May 1981 and the contacts with the Logan and Garden City coaches. Although the district court declined to grant summary judgment on the issue of whether the Beloit track was itself "experimental," the court did grant summary judgment that the invention was "sufficiently complete to invoke the on-sale bar" when a track "like Beloit" was offered. This is an inappropriate line of distinction, for an exper-

imental athletic track does not become a completed invention because of steps taken to interest potential customers. The standard of "sufficiently complete," applied by the district court, is unworkable, for the inventor will not know, until informed by a judge, at what stage his experimental method became, with judicial insight based on hindsight, sufficiently complete to start the time bar to patentability.

■ This does not mean that an inventor's continuing monitoring of his invention will stay the commencement of the bar period for as long as this activity is ongoing. However, it is always relevant, in an entirety-of-the-circumstances determination, whether the invention had indeed been shown to work for its intended purpose and whether the inventor was acting reasonably in continuing to evaluate the invention. The nature of the contacts that were made with potential customers during the period of development of the invention are also relevant to the totality of the circumstances evaluation that our precedent mandates.

■ Maxfield averred that he did not know whether his new track as installed at Beloit would perform satisfactorily until the track was subjected to a winter freeze and thaw cycle. He averred that it was necessary to evaluate the Beloit track in actual conditions of use in order to determine if it would function as intended and would not crack or otherwise deteriorate in the extremes of Kansas weather. He averred that he used new layering techniques, and that he had to perform considerable repair even during the summer of 1981. Maxfield's wife, who worked on the hand-done installation, testified to similar effect. In view of the inventor's uncertainty as to the status of the Beloit track, Rothwell's contacts with potential customers within days of the laying of the Beloit track can not be held on summary judgment, as a matter of law or undisputed fact, to be an on-sale event for purposes of § 102(b). *See Gould Inc. v. United States,*

---

2. The standard of the totality of the circumstances has been criticized as unnecessarily vague, *see, e.g., The Advisory Commission on Patent Law Reform: A Report to the Secretary of* Commerce (1992), but it remains the law of this circuit unless changed by statute or by the court en banc.

217 Ct.Cl. 167, 579 F.2d 571, 583, 198 USPQ 156, 167 (1978) (period of experimental use continues until after the inventor "conducts tests needed to convince himself that the invention is capable of performing its intended purpose in its intended environment.")

ATCC presented no evidence negating the need to evaluate the track under actual conditions of use. ATCC's position was simply that Rothwell's marketing activities sufficed to start the on-sale bar as a matter of law, and that it is not relevant whether Maxfield reasonably believed that his track needed evaluation of its durability under actual conditions. As we have discussed, that is not a correct statement of the law. The general rule is that the on-sale bar starts to accrue when a completed invention is offered for sale. *Baker Oil Tools*, 828 F.2d at 1563, 4 USPQ2d at 1213–15. Facts underlying the on-sale bar must be proved by clear and convincing evidence. *Id.* at 1563, 4 USPQ2d at 1213. The trier of fact must determine whether the invention was completed and known to work for its intended purpose, or whether the inventor was continuing to develop and evaluate the invention; whether the inventor was merely exploring the market, or had made an unconditional offer to sell a completed invention. When these material facts are at issue, summary disposition is negated. For example, in *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1311–12, 7 USPQ2d 1881, 1884–85 (Fed.Cir.1988), there was a genuine factual dispute as to whether the invention had been shown to work for its intended purpose, thus negating summary judgment. Conversely, in *Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494, 498, 25 USPQ2d 1290, 1292 (Fed. Cir.1992) the court upheld the grant of summary judgment when the inventor had experienced repeated satisfactory performance and did not view the ophthalmic procedure as experimental.

The patented invention is directed to an "all-weather surface." The titles of both the '833 and '622 patents are "Method for Constructing All–Weather Surface." The specifications of both patents include among the objects of the invention the making of an outdoor track whose susceptibility to the deleterious effects of weather is substantially decreased. The '622 patent states at column 1 lines 8–10 that "[t]his invention pertains to activity surfaces and more particularly, to an all-weather surface to be used for running tracks," and at column 1 line 67 et seq. that "[s]till another object of the present invention is to provide a process wherein the susceptibility of the materials to the deleterious effects of sunlight, moisture and weathering are substantially decreased." Claim 18 of the '833 patent refers to "weather and ultraviolet degradation."

As we have discussed, the district court applied an incorrect standard in holding that because Maxfield's track had been extensively developed, Rothwell's marketing efforts started the bar period as a matter of law. The court's reliance on *UMC Electronics* for this proposition was inapt, for that case did not turn on whether the invention had been "extensively developed" at the time it was offered for sale, but on whether it was known that the invention would work for its intended purpose without further testing or evaluation. When an evaluation period is reasonably needed to determine if the invention will serve its intended purpose, the § 102(b) bar does not start to accrue while such determination is being made. This is a factual issue, and could not be found adversely to the nonmovant on summary judgment.

We do not, of course, hold that an inventor may avoid the on-sale bar while engaging in commercial activity, simply by continuing to make improvements in the commercialized invention. The totality of the circumstances standard does not accommodate behavior that contravenes the policies underlying the law. However, such abuse was not here shown. There were only a few days between the completion of the laying of the Beloit High School track and the demonstration and offer to Logan High School. It is not disputed on this record that there had not been time to determine whether the track would actually perform as intended, free of the problems experiences with the Derby track. In response to ATCC's motion for summary judgment, Seal–Flex met its burden of showing that material facts were in dispute and that the requirements of § 102(b) were not met as a matter of law. The summary judgment is reversed, and the cause is remanded for further proceedings.

## ATTORNEY FEES

ATCC moved for attorney fees pursuant to 35 U.S.C. § 285. The district court denied the motion, stating that "plaintiff had a reasonable basis for filing the lawsuit and contrary to defendant's argument, plaintiff did not bring or prosecute the case in bad faith." We discern no abuse of discretion in the district court's ruling, which is affirmed.

Costs to Seal–Flex.

***REVERSED AND REMANDED; ATTORNEY FEES DENIED.***

BRYSON, Circuit Judge, concurring in part and concurring in the result.

I agree with the court that summary judgment should not have been granted in this case, but I disagree with the court's analysis in one respect. I therefore concur in the result with regard to the summary judgment issue.

In granting the defendant's motion for summary judgment, the district court relied on two purported offers to sell a product made by the patented process: the "Logan offer" and the "Garden City offer." As to the Garden City transaction, the evidence does not establish that there was an actual offer to construct a track made by the patented process. The purported Logan offer, however, presents a closer question. The undisputed evidence supports the district court's conclusion that a Ritchie employee, Joseph Rothwell, sent a proposal to the Logan High School track coach, offering to construct a track "just like Beloit," by which Rothwell meant a track constructed by the same Seal–Flex process that was used at Beloit High School. Nonetheless, the evidence with respect to the purported Logan offer does not clearly establish that Rothwell was authorized to make an offer to sell the claimed process at the time the Logan proposal was made. For that reason, I agree with the court that summary judgment should not have been granted in this case.

Although this court has articulated the legal standard for the "on-sale bar" of 35 U.S.C. § 102(b) in different ways, it seems to me that the language and policies of the statute are best captured by the following rule: if the sale or offer in question embodies the invention for which a patent is later sought, a sale or offer to sell that is primarily for commercial purposes and that occurs more than one year before the application renders the invention unpatentable. Accordingly, if the evidence at trial shows that Rothwell's communications with representatives of Logan High School constituted an authorized offer to make a purely commercial sale of a product embodying the patented method, those communications (which occurred more than a year before the patent applications were filed) would trigger the on-sale bar and invalidate the patents in suit.

An inventor should not be able to sell his invention for commercial purposes, but avoid the on-sale bar by separately conducting tests on his invention. As I view the case, it is therefore irrelevant to the status of the Logan transaction that Maxfield was continuing to evaluate the performance of the Seal–Flex process at the Beloit track. If the Logan transaction constituted an offer to make a commercial sale of a product made by the later-patented process, the on-sale bar should be triggered even if Maxfield was concurrently conducting tests on his process at another facility.