**Slip Op. 10 - 63**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HONORABLE NICHOLAS TSOUCALAS, SENIOR JUDGE**

_____x

SPARKS BELTING COMPANY,                    :

                          Plaintiff, :

              v.                           :
                                             Court No. 02-00245
UNITED STATES,                             :

                          Defendant. :

_____x

[Defendant's motion for summary judgment is granted;  Plaintiff's cross-motion is denied]

Dated: June 1, 2010

Edmund Maciorowski, P.C. (Edmund Maciorowski) for Plaintiff.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Aimee Lee); Chi S. Choy, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, Of Counsel, for Defendant.

**OPINION**

**TSOUCALAS, Senior Judge:** At issue is the proper classification under the Harmonized Tariff Schedule of the United States ("HTSUS") for certain merchandise imported by Plaintiff Sparks Belting Company ("Sparks"). This action, which has been designated a test case pursuant to USCIT Rule 84, is before the Court on cross-motions for summary judgment. For the reasons set forth below, the Court finds that no genuine issues of material fact remain and this dispute may be resolved pursuant to USCIT Rule 56.

I.    **Background**

The present action involves several entries made between March and September of 2000 through the port of Detroit, Michigan.  The subject imports are described in the commercial invoices and other entry documents as "conveyor belts".  See Pl.'s Statement of Material Facts as to Which There is No Genuine Issue to be Tried ("Pl.'s Facts") ¶ 12; Def.'s Resp. to Pl.'s Statement of Material Facts as to Which There is No Genuine Issue to be Tried ("Def.'s Resp. to Pl.'s Facts") ¶ 12.  The merchandise is designed and used in industrial applications for the conveyance of food products and other goods.  See Pl.'s Facts at ¶ 25.

Upon liquidation of the entries, the merchandise was classified and assessed with duties by U.S. Customs and Border Protection ("Customs" or the "Government") under either Subheading 5910.00.10, HTSUS,[1] with an assessed duty rate of 5.6% ad valorem, or Subheading 5910.00.90, HTSUS, with a duty rate of 3.6% ad valorem.  See Entries, Protests.  The relevant portions of Heading 5910 are as follows:

| | | |
|---|---|---|
| 5910.00 | Transmission or conveyor belts or belting, of textile material, whether or not impregnated, coated, covered or laminated with plastics, or reinforced with metal or other material: | |
| 5910.00.10 | Of man-made fibers | 5.6% |
| | *          *          * | |
| 5910.00.90 | Other | 3.6% |

Sparks protested Customs' classification of the subject merchandise, asserting that classification was proper under either 5903.10.15, HTSUS, or 5903.20.15, HTSUS, both with dutiable rates of 1.4% ad valorem.  See

_____

[1] Unless otherwise indicated, all statutory citations, including those to the HTSUS, are to the 2000 edition.

Protests. After Customs denied Plaintiff's protest at the port level, Sparks filed a timely summons with the Court disputing the classification of the subject imports. All liquidated duties, charges and exactions for the subject entries have been paid prior to the commencement of this action. See Compl. at ¶ 3.

During discovery, Defendant served interrogatories on Sparks in order to obtain samples of specific measurements. See Def.'s Br. at Ex. 2. Sparks submitted ten sample pieces of the subject merchandise and a proposed stipulation in early autumn of 2008. With one exception in August of 2009, Plaintiff did not produce any further samples to Defendant. See Def.'s Br. at 2; id. at Ex. 3. The Government proceeded to file a motion to compel more samples. See Pl.'s Mot. to Compel (Doc. 25). The Court denied Defendant's motion on the basis that the Government had ample time to attain the samples but failed to, given that the case had been ongoing since 2002 and that discovery had concluded. See Mem. Order Den. Def.'s Mot. to Compel dated Aug. 31, 2009 (Doc. 29).

Both Plaintiff and Defendant concurrently moved for summary judgment.[2] As evidentiary support, the parties have submitted numerous documents including the briefs for summary judgment and responsive documents thereto. See Pl.'s Mot. for Summ. J. ("Pl.'s Br."); Def.'s Resp. to Pl.'s Mot. for Summ. J. ("Def.'s Resp."); Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Summ. J. ("Pl.'s Reply"); Def.'s Mot. for Summ. J. ("Def.'s Br."); and Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp."); Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Def.'s Reply"). Sparks, who had originally named twenty-four entries containing

---

[2] Plaintiff also filed a motion for leave in order to file a motion for oral argument out of time on May 7, 2010 (Doc. 48), which was denied on May 13, 2010 (Doc 52).

eighteen products, abandoned its claims concerning all but seven entries containing eight different products.[3]  See Summons; Def.'s Statement of Material Facts as to Which There is No Genuine Issue to be Tried ("Def.'s Facts") ¶¶ 1-2 ; Pl.'s Resp. to Def.'s Statement of Material Facts as to Which There is No Genuine Issue to be Tried ("Pl.'s Resp. to Def.'s Facts") ¶ 1; Pl.'s Br. at 2, n.2.  Accordingly, this Court dismisses the claims abandoned by Sparks.[4]

On March 31, 2010, Defendant moved to strike portions of the affidavit of Ivo Spaargaren, attached as an exhibit to Plaintiff's brief.  See Def.'s Mot. to Strike (Doc. 41).  This Court granted Defendant's motion, ruling that parts of Spaargaren's affidavit lacked a basis of personal knowledge in contravention of USCIT Rule 56(e).  See Mem. Order Granting Def.'s Mot. to Strike, dated Apr. 20, 2010 (Doc. 47).

## II.  Contentions of the Parties

Sparks contends that its summary judgment motion should be granted because Customs improperly classified the subject imports under Heading 5910, HTSUS, despite Chapter Note 6 which excludes "[t]ransmission or

---

[3] The remaining merchandise at issue before the Court includes: BF BP 111 A/S [Entry 0056488-8]; 2M8 10/0 G and 2M8 20/0 SG3 [Entry 0054589-2]; EM 8/2 0+04 PU Trans AS [Entry 0018964-5]; EM 6/1+1 PVC AGREEN [Entry 0018909-0]; MF BP 111 A/S [Entry 0056352-6]; MF GP 270 [Entry 0055038-2]; Type 2E7-0N White [Entry 0055741-1].  See Pl.'s Resp. to Def.'s Facts at ¶¶ 1-2.

[4] The dismissed claims include: Sparks Part 02-800, WF NSF 24 Paraskin N550 BEEG Blue [See Pl.'s Resp. to Def.'s Facts ¶ 6]; Sparks Part 03-111, MF WU 110 A/S [See Pl.'s Resp. to Def.'s Facts ¶ 7]; Sparks Part 03-134, Ultra Kool II [See Pl.'s Resp. to Def.'s Facts ¶ 8]; Sparks Part 03-135, Ultra Kool II Light [See Pl.'s Resp. to Def.'s Facts ¶ 9]; Sparks Part 03-150, MF GU 210 [See Pl.'s Resp. to Def.'s Facts ¶ 10]; Sparks Part 03-326, MF AU 200 A/S, 12/2 00+00 PU Black AS [See Pl.'s Resp. to Def.'s Facts ¶ 12]; Sparks Part 03-332, MF LBP 210, UN 100 P/M [See Pl.'s Resp. to Def.'s Facts ¶ 13]; Sparks Part 02-802, Silon 40 HC, WF NSF 15, 12/2 00+00 PU Black AS, Paraskin N500 BEEG [See Pl.'s Resp. to Def.'s Facts ¶ 17]; Sparks Part 03-162, MF BU 300, 3 LRA RX [See Pl.'s Resp. to Def.'s Facts ¶ 17]; Sparks Part 03-175, Ultra Kool II Tan, 2 M8 3/0 0U Tan [See Pl.'s Resp. to Def.'s Facts ¶ 17]; Sparks Part 03-242, MF WP 220, 2 M8 5/00 2T [See Pl.'s Resp. to Def.'s Facts 27]; and Sparks Part 03-377, MF GP 230 [See Pl.'s Reply at 2, n.1].

conveyor belting, of textile material, of a thickness of less than 3 mm" from that heading.  Sparks alleges that the subject articles are properly classified under HTSUS subheadings 5903.10.15 or 5903.20.15, depending on whether they are coated with polyvinyl chloride  or polyurethane, respectively.

The Government asserts that summary judgment is appropriate in its favor for several reasons.  Regarding the products not represented by a sample, Defendant posits that Sparks failed to establish elements essential to its case and upon which it bears the burden of proof. Further, according to Defendant, the subject imports cannot be classified under Sparks' claimed classification provisions because those subheadings contemplate the products being a fabric in accordance with Note 9 to Section XI of the HTSUS, which the subject merchandise are not.  Finally, with regard to Entry 0054859-2, Defendant submits that the Court lacks jurisdiction because Sparks's protest of that entry has already been granted.

## III.  Summary Judgment and Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  USCIT R. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  At the summary judgment stage, the question to be answered is "whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Processed Plastic Co. v. United States, 29 CIT 1129, 1132, 395 F.Supp.2d

1296, 1299 (2005) (<u>internal</u> <u>citation</u> <u>omitted</u>).  The purpose of summary judgment is to avoid a clearly unnecessary trial.  <u>See</u> <u>Seal-Flex, Inc. v. Athletic Track and Court Constr.</u>, 98 F.3d 1318, 1321 (Fed. Cir. 1996) (<u>citing</u> <u>Matsushita Electric Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

The fact that both parties have moved for summary judgment "does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987) (internal citation omitted).  In classification cases, summary judgment is appropriate when "there is no genuine dispute as to . . . what the merchandise is." <u>Ero Indus., Inc. v. United States</u>, 24 CIT 1175, 1179, 118 F.Supp.2d. 1356, 1359 (2000).  In other words, if no dispute over a material fact would impact the outcome of the suit and the action focuses solely on the proper classification of the merchandise, a court may grant summary judgment.  <u>See</u> <u>Bausch & Lomb, Inc. v. United States</u>, 148 F.3d 1363, 1365 (Fed. Cir. 1998).

Ultimately, it is the Court's duty to determine the correct classification.  See Jarvis Clark Co. v. United States, 733 F.2d 873, 876 (Fed. Cir. 1984).  Classification cases are reviewed de novo by this Court, pursuant to 28 U.S.C. § 2640(a).  See Cargill, Inc. v. United States, 28 CIT 401, 408, 318 F.Supp.2d 1279, 1287 (2004).  The Court must determine whether "the government's classification is correct, both independently and in comparison with the importer's alternative." <u>Sumitomo Corp. of America v. United States</u>, 18 CIT 501, 505, 855 F.Supp. 1283, 1287 (1994).

In order to establish the proper classification of imported

merchandise, the Court applies a two-step analysis whereby it "(1) ascertain[s] the proper meaning of the specific terms in the tariff provision; and [then] (2) determin[es] whether the merchandise at issue comes within the description of such terms as [] properly construed." Global Sourcing Group v. United States, 33 CIT __, __, 611 F.Supp.2d 1367, 1371 (2009) (citing Pillowtex Corp. v. United States, 171 F.3d 1370, 1373 (Fed. Cir. 1999)). The first step of the analysis is a question of law and the second is a question of fact. See Pillowtex, 171 F.3d at 1373.

The General Rules of Interpretation ("GRIs") direct classification of merchandise under the HTSUS. See Boen Hardwood Flooring, Inc. v. United States, 357 F.3d 1262, 1264 (Fed. Cir. 2004). The GRIs are applied in numerical order; once a particular rule provides proper classification, a court may not consider any subsequent GRI. See Mita Copystar Am. v. United States, 160 F.3d 710, 712 (Fed. Cir. 1998). The first GRI holds that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." GRI 1; see also Orlando Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed. Cir. 1998). Section and Chapter Notes are "not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202." Michael Simon Design, Inc. v. United States, 30 CIT 1160, 1164, 452 F.Supp.2d 1316, 1321 (2006) (internal quotation omitted). The Explanatory Notes ("ENs"), which accompany each chapter of the HTSUS, provide persuasive assistance to the court, though they do not constitute legally binding authority. See Lonza, Inc. v. United States, 46 F.3d 1098, 1109 (Fed. Cir. 1995).

**IV. DISCUSSION**

## A.    Jurisdiction over Entry 0054859-2

Prior to addressing the propriety of Customs' classification, the Court must dispense with a jurisdictional issue.  Upon liquidation, Customs classified Entry 0054859-2 under 5910.00.10, HTSUS, with an assigned duty of 5.6% ad valorem.  See Def.'s Resp. at 7.  Sparks protested that rate of liquidation and claimed that the goods should be reliquidated under Subheading 5903.10.15, HTSUS, dutiable at 1.4% ad valorem.  See Pl.'s Br. at 20; Protest No. 3801-01-100321.  Customs denied Sparks's protest on February 7, 2002.  See Summons.  However, less than three months later, Customs reliquidated Protest No. 3801-01-100321 at the rate sought by Sparks in its protest and Plaintiff received duty refund checks for all articles under this protest, including Entry 0054859-2.  See Pl.'s Reply at 3; Pl.'s Br. at Ex. 14.  Accordingly, Defendant asserts, since Sparks received the relief it sought, there is no case or controversy with regard to these products and the Court lacks jurisdiction with respect to Entry 0054859-2.  See Def.'s Resp. at 7. The Court agrees.

A condition precedent to the Court's power to adjudicate the appeal of a denied entry is that an importer first file a protest with Customs by ninety days after notice of liquidation.  See 28 U.S.C. § 1581(a); 19 § U.S.C. 1514.  Such protest must be denied by Customs, in whole or in part, for the Court to hear the civil action.  See § 1581(a).  Similarly, an entry that has been reliquidated must also be protested and denied by Customs for the Court to have jurisdiction.  "[W]hen Customs changes its decision 'to conform to a decision sought by a protest, that protest has been completely granted.'"  Novell, Inc. v. United States, 21 CIT 1141, 1142, 985 F.Supp. 121, 123 (1997) (quoting Transflock, Inc. v. United

States, 15 CIT 248, 249, 765 F.Supp. 750, 751 (1991)). This is because "reliquidation vacates and is substituted for the collector's original liquidation. The reliquidation, not the original liquidation, is the final decision of the collector as to the rate and amount of duty to be paid by the importer, and the time to protest begins to run from the date of the latest liquidation." Mitsubishi Electronics America, Inc. v. United States, 18 CIT 929, 931, 865 F.Supp. 877, 879 (1994) (internal citation omitted). A reliquidation becomes final if the importer fails to file a protest with Customs within ninety days. See §§ 1514(a), (c). Thus, protest of a reliquidation with Customs is a prerequisite to seeking judicial review. See Transflock, 15 CIT at 249.

Sparks asserts that the products at issue remain relevant since the action before the Court has been designated a test case, involving the same fact or questions of law for six pending cases, some of which include the same products imported under the pertinent entry at issue here, Entry 0054859-2. See Pl.'s Reply at 3-4. Plaintiff further contends that the issues in this case are all the more salient considering that other ports continue to enter these same products at the current high rate of duty, resulting further litigation. See Pl.'s Reply at 4. However, it is a well-established principle that the outcome of a classification case is not considered res judicata for merchandise that are not stemming from the actual transactions at issue before the court. See United States v. Stone & Downer Co., 274 U.S. 225, 235-237, 47 S.Ct. 616, 71 L.Ed. 1013 (1927). The typical res judicata rules do not apply in protest cases and collateral estoppel doesn't prevent an importer from successive litigation over the classification of merchandise, even when subsequent importations involve the same issues of fact and the same questions of law. See, DaimlerChrysler Corp. v. United States, 442 F.3d

1313, 1321 (Fed. Cir. 2006). The Court has no power to entertain issues that are not in controversy under the instant case. Sparks will be able to fully address the products therein and related Customs decisions in other ports when they are ripe for adjudication. Accordingly, Entry 0054859-2 must be dismissed from the case at bar. The remainder of this dispute falls within the Court's jurisdiction under 28 U.S.C. § 1581(a).

**B.    Motion for Summary Judgment**

On a motion for summary judgment, the movant has the burden of coming forth with evidence to support the factual allegations of its claims. See Rockwell Automation Inc. v. United States, 31 CIT 692, 696 (2007) (citing Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.")). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to its case. See Celotex, 477 U.S. at 323. Consequently, Sparks bears the burden of offering evidence to support its claims that the correct classification of the subject merchandise is under HTSUS subheadings 5903.10.15 or 5903.20.15 and not 5910.00.90 or 5910.00.10. In order to determine whether Sparks has met its burden, the Court must ascertain the proper meaning of headings 5910 and 5903, and their relevant section or chapter notes under the GRIs.

To begin, Heading 5910 applies to "[t]ransmission or conveyor belts or belting, of textile material, whether or not impregnated, coated,

covered or laminated with plastics, or reinforced with metal or other material". Chapter Note 6 to Heading 5910 provides that it does not apply to "[t]ransmission or conveyor belting, of textile material, of a thickness of less than 3mm." To that end, the Court must preliminarily determine whether the imports are more or less than 3mm thick: if the merchandise at issue is more than 3mm thick, it remains classified in Heading 5910, but if it is less than 3mm thick, the belting is excluded from this heading.

Next, Heading 5903 encompasses "[t]extile fabrics impregnated, coated, covered or laminated with plastics, other than those of heading 5902." For the subject merchandise to be classified under this heading, two notes to Chapter 59 must be considered. The first note defines textile fabric: "[e]xcept where the context otherwise requires, for the purposes of this chapter the expression "<u>textile fabrics</u>" applies only to the woven fabrics of chapters 50 to 55 and headings 5803 and 5806, the braids and ornamental trimmings in the piece of heading 5808 and the knitted or crocheted fabrics of heading 6002." Note 1 to Chapter 59 (<u>emphasis</u> <u>in</u> <u>original</u>). Thus, to be classified in Heading 5903, the subject imports must consist of one of these textile fabrics.

The second note pertinent to Heading 5903 is Chapter Note 2(a). Note 2(a)(1) provides that Heading 5903 does not apply to "[f]abrics in which the impregnation, coating or covering cannot be seen with the naked eye," with no account being taken of any color changes. Thus, if the merchandise at issue is comprised of a textile fabric that has been impregnated, coated, covered or laminated with a plastic material that cannot be seen with the naked eye, it is excluded from the parameters of Heading 5903. Note 2(a)(2) states that Heading 5903 does not apply to "[p]roducts which cannot, without fracturing, be bent manually around a

cylinder of a diameter of 7 mm, at a temperature between 15°C and 30°C." Accordingly, if the subject merchandise cannot be bent manually without fracturing, it is precluded from classification in Heading 5903. Lastly, Note 2(a)(3) conditions that Heading 5903 excludes "[p]roducts in which the textile fabric is either completely embedded in plastics or entirely coated or covered on both sides with such material, provided that such coating or covering can be seen with the naked eye with no account being taken of any resulting change in color." Thus, if the products at issue are completely embedded or entirely coated or covered on both sides with plastic that can be seen with the naked eye, it is ruled out from classification under Heading 5903.

Now that the language of the tariff provisions has been ascertained, the Court turns to the facts of the case at bar in order to determine whether the subject merchandise fits within the parameters of the relevant subheadings. In determining this question of fact, the Court also proceeds in ascertaining whether Plaintiff has carried its burden of establishing the elements of its case and prevail on its motion.

### 1. Entries Without Representative Samples

The Government advances that the headings and applicable chapter notes at issue require specific information that can only be ascertained by examining a physical sample. See Def.'s Br. at 7. Since only three of the imports at issue were represented by a sample, and the absence of any necessary information to determine the classification of each product is tantamount to a failure of proof by Plaintiff, Defendant concludes that Sparks has failed to prove its case as a matter of law regarding the three remaining sample-less products, BF BP 111 A/S (Entry 0056488-8), EM 6/1+1 PVC AGREEN (Entry 0018909-0), and MF BP 111 A/S (Entry 056352-

6).

In response, Sparks posits that samples themselves are not a required element of proof for classifying an article.  To support this proposition, Plaintiff relies on two Customs Court cases, W.T. Grant Co. v. United States ("Grant"), 74 Cust.Ct. 3, 11, C.D. 4579 (1975), and L.B. Watson Co., A/C Murphy Reir, Inc. v. United States ("Watson"), 79 Cust.Ct. 85, 87, C.D. 4717 (1977), both holding that any deficiency caused by a lack of samples had been overcome by a reliable and complete record, thereby allowing the Court to determine the proper classification of the merchandise.  See Grant, 74 Cust.Ct. at 9; Watson, 79 Cust.Ct. at 90.

It is accurate to state that samples of the merchandise as imported would have conclusively determined classification due to the nature of the tariff provisions advanced here by Sparks.  However, it is also true that the unavailability of physical samples is not a bar to recovery.  These two seemingly incompatible statements can be reconciled.  The Watson Court elucidates: although "it is not necessary for plaintiff to offer a sample of the imported merchandise, it must, however, present adequate evidence to establish the nature and essential characteristics of the importation."  Watson, 79 Cust.Ct. at 87.  Thus, the crux of the issue is whether Plaintiff's evidence as a whole succeeds in establishing the essential characteristics required by the relevant tariff provisions.

Sparks claims that, even without samples, it has "provided definitive evidence regarding the physical characteristics of the articles."  Pl.'s Resp. at 2.  To that end, Plaintiff submitted to the Court documentary exhibits including technical data sheets and sworn

affidavits[5], which it contends "present incontrovertible evidence establishing that the physical characteristics of the subject articles are representative of the condition of these articles, as imported." Id. Both the affidavits of Grasmeyer and Spaargaren address the sample-less products, and include information on their manufacture, thickness, and amount of plastic by weight. This information is cross-referenced by the technical data sheets of both Sparks and the manufacturer of the product.

However, the relevant tariff provisions and chapter notes in this case require very specific information that goes beyond basic data that can typically be found in technical datasheets, books and records. The supporting documentation contains manufacturing data which, in many instances, establishes only some of the general characteristics of the products, but not the very specific physical properties of the imports necessary here. Furthermore, neither affidavit satisfies the criteria required by the chapter notes. Spaargaren attempts to testify on these characteristics, however the Court has previously ruled that Spaargaren may not testify based on his personal knowledge and can only testify based on books and records. See Mem. Order dated Apr. 20, 2010 (Doc 47). Grasmeyer does not testify at all to the physical test requirements. The result is that both Spaargaren and Grasmeyer's testimony fails to establish the essential characteristics required for classification. Thus, although Sparks presented some data concerning the products during discovery, such information is incomplete and falls short in satisfying

---

[5] The affidavits that Plaintiff submitted are from John Grasmeyer, Vice President of Operations at Sparks ("Grasmeyer Aff."); Ivo Spaargaren, responsible for manufacturing within the Management Team of manufacturer Ammeraal Beltech Holding, B.V. ("Spaargaren Aff."); and Peter de Vries, Inside Sales Representative of manufacturer Derco, B.V. ("De Vries Aff."). See Pl.'s Br. and accompanying documents.

the visibility and physical test requirements necessary for classification here.

Consequently, the Court finds that Plaintiff has submitted sufficient proof with respect to the issue of some, but not all, of the products at issue. Where samples have been provided, Sparks has met its burden; for those products not represented by a sample, Plaintiff is unable to provide adequate evidence establishing the essential characteristics of each product in order to allow for an accurate classification. In particular, the evidence presented by Plaintiff fails to establish with certainty the essential characteristics, nature, and identity of the merchandise without samples: BF BP 111 A/S (Entry 0056488-8); EM 6/1+1 PVC AGREEN (Entry 0018909-0); and MF BP 111 A/S (Entry 0056352-6). Without such information, the Court cannot determine accurate classification of these products. The Government is entitled to summary judgment as a matter of law concerning these entries because Plaintiff has failed to establish the existence of elements essential to its case, and on which it bears the burden of proof at trial. There exists "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. 317 at 322-23 (citing Anderson, 477 U.S. at 250).

**2.    Classification for Products with Samples Provided**

Samples exist for three of the remaining products at issue: MF GP 270 (Entry 0055038-2); Type 2E7-0N White (Entry 0055741-1); and EM 8/2 0+04 PU Trans AS (Entry 0018964-5). The parties are in agreement as to the nature of these three products but disagree as to the meaning and scope of the tariff provisions at issue. The sole issue is a matter of

properly interpreting the classification term at issue to determine whether the scope of that term is broad enough to encompass the items with particular characteristics.  Accordingly, this matter is ripe for summary judgment of these three products.

The Court begins its analysis with the competing tariff headings. Determining the most appropriate classification for the merchandise involves a "close textual analysis for the language of the headings and the accompanying explanatory notes." Conair Corp. v. United States, 29 CIT 888, 891-892 (2005) (internal citation omitted).  In determining which heading is more specific, and hence more appropriate for classification, a court should compare only the language of the headings and not the language of the subheadings.  See GRI 1, 3.

**MF GP 270 and Type 2E7-0N White**

Chapter Note 6 permits classification under Heading 5910 for products that are 3mm thick or more.  Both MF GP 270 and Type 2E7-0N White are less than 3mm thick. See Def.'s Facts ¶ 15(a),  ¶ 16(a); Pl.'s Resp. to Def.'s Facts ¶ 15, ¶ 16.  Although the parties differ on the exact measurements of thickness, this is not a material fact since both parties concur that the products are within the parameters of the relevant chapter note.  Thus, these products are excluded from classification under Heading 5910.

Turning to Heading 5903, Chapter Note 1 provides that the subject merchandise must be a "textile fabric."  The products at issue are woven fabrics.  See Def.'s Facts at ¶ 15(b), ¶ 16(b); Pl.'s Resp. to Def.'s Facts at ¶ 15, 16.  Since woven fabrics are a textile fabric, these products fulfill the requirements of Chapter Note 1(a), and the evaluation of Heading 5903 can proceed.

Chapter Note 2(a)(1) and (3) require the merchandise to be comprised of a textile fabric that has been impregnated, coated, covered or laminated with a plastic material able to be seen with the naked eye but not completely embedded, coated, or covered on both sides with plastics. Type 2E7-0N White meets the terms of this requirement. See De Vries Aff. ¶ 4-5; Def.'s Facts ¶ 16. For MF GP 270, Sparks's evidence does not speak to the issue of whether the requirements of Chapter Note 2(a)(1) and (3) have been met and thus the Court relies on Defendant's lab analysis to conclude that the coating is visible to the naked eye. See Declaration of Deborah Walsh, Customs National Import Specialist, Def.'s Br. at Ex. 8 ("Walsh Decl.") ¶ 11.

Chapter Note 2(a)(2) conditions that the subject merchandise must be able to be bend manually without fracturing around a cylinder with a diameter of 7 mm, at a temperature between 15°C and 30°C. Again, Type 2E7-0N White clearly meets this requirement. See Walsh Decl. ¶ 11; De Vries Aff. ¶ 6. With respect to MF GP 270, however, Plaintiff's evidence fails to establish the relevant characteristics and the Court again uses Defendant's lab report to determine that the product is able to bend manually around a 7 mm cylinder. Thus, MF GP 270 complies with Chapter Note 2(a)(2) and can be classified under Heading 5903. Accordingly, both Type 2E7 0N White and MF GP 270 are classifiable under Heading 5903.

Having determined that Heading 5903 controls the analysis, the Court may now look to the subheadings to find the correct classification for the merchandise. See GRI 6; Orlando Food, 140 F.3d at 1440. Sparks advances Subheading 5903.10.15, whereas the Government asserts that 5903.10.20 is more appropriate. The pertinent provisions of Heading 5903 are as follows:

5903        Textile fabrics impregnated, coated, covered or laminated with plastics, other than those of heading 5902:

5903.10       With polyvinyl chloride:

               *              *              *

5903.10.15         Of man-made fibers: Fabrics specified in note 9 to section XI: Over 60 percent by weight of plastics          1.4%

               *              *              *
5903.10.20         Of man-made fibers: Other: Over 70 percent by weight of rubber or plastics          1.7%


The merchandise is made with polyvinyl chloride (see Def.'s Facts ¶ 15(d), 16(d); Pl.'s Facts ¶ 56) and so the critical issue is whether the products qualify as "fabrics specified in note 9 to section XI," which provides that:

> [t]he woven fabrics of chapters 50 to 55 include fabrics consisting of layers of parallel textile yarns superimposed on each other at acute or right angles. These layers are bonded at the intersections of the yarns by an adhesive or by thermal bonding.

Section XI, Note 9, HTSUS. Sparks contends that the subject merchandise are Note 9 fabrics; the Government maintains that they are not.

Plaintiff interprets the language of Note 9 expansively to include both the fabrics specified in the note as well as the regular "woven fabrics of Chapters 50 to 55," which is defined in the ENs as:

> products obtained by interlacing textile yarns (whether of the kinds classified in Chapters 50 to 55 or those regarded as twine, cordage, etc., of heading 56.07), rovings, monofilament or strip and the like of Chapter 54, loop wale-yarn, narrow ribbons, braids or narrow fabrics (consisting of warp without weft assembled by means of an adhesive, etc.), on warp and weft looms.

Harmonized Commodity Description and Coding System Explanatory Notes, World Customs Organization, Vol. 2, Section XI, I(C). Sparks claims that

any other reading of the term "woven" in Note 9 would negate its plain meaning, and accordingly, Plaintiff asserts that Note 9 fabrics can be joined together by mechanical bonding or by traditional interlacing.

On the contrary, Defendant argues, a Note 9 fabric cannot be a woven fabric because by definition it does not have an interlaced fiber construction. The Government urges the Court consider the EN in its entirety, since it also provides that "[t]he essential characteristics of [a Note 9 fabric] is that the yarns are not interlaced as in conventional woven fabrics, but are bonded at the intersections with an adhesive or by thermal bonding." Id. According to Defendant, it is plain that Note 9 fabrics are specialized and do not include traditional woven fabrics that weave over and under each other. See Def.'s Br. at 15.

The Court finds that Plaintiff's interpretation of Note 9 conflicts with the true meaning of the tariff provision. It is a "general rule of statutory construction that where Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute." Pillotex, 171 F.3d at 1373. Section XI, Note 9 itself explicitly defines what a Note 9 fabric construction is: a specific construction bonded with an adhesive or by thermal bonding, not a traditional weave. If Note 9 fabrics were read in the way that Sparks submits, there would be no need to distinguish Note 9 fabrics from regular woven fabrics. The fact that Congress included this provision indicates that it intended to delineate regular woven fabrics from Note 9 fabrics and restrict the scope of the subheading.

The Customs laboratory concluded that both MF GP 270 and Type 2E7-0N White are textile fibers that are interlaced and woven in the traditional

sense, and therefore cannot be Note 9 fabrics classifiable under Subheading 5903.10.15.  See Walsh Decl.; Ex. 5, Laboratory Reports. Accordingly, entries 0055038-2 and 0055741-1, containing products MF GP 270 and Type 2E7-0N White, are classified under Subheading 5903.10.20 with a duty rate of 1.7% ad valorem.

**EM 8/2 PU Trans AS**

The final product, EM 8/2 PU Trans AS, measures less than 3mm wide and cannot be classified within the parameters of Chapter 5910.  See Def.'s Facts ¶ 11(a); Pl.'s Resp. to Def.'s Facts ¶ 11.  Turning to Heading 5903, EM 8/2 PU Trans AS has been established as a woven fabric in conformity with the requirements of Chapter Note 1.  See Def.'s Facts at ¶ 11(b); Pl.'s Resp. to Def.'s Facts at ¶ 11.  The Court relies on Defendant's lab analysis of the representative sample for EM 8/2 PU Trans AS, to conclude that the coating is visible to the naked eye, since Plaintiff fails to establish the criteria of Chapter Note 2(a)(1) and (3) based on the record.

The parties differ as to whether EM 8/2 PU Trans AS can bend manually around a cylinder of a diameter of 7 mm, at a temperature between 15°C and 30°C without fracturing.  Sparks asserts that this product can meet the test of Note 2(a)(2) but offers no admissible evidence to that end.  Instead, it urges the Court to conduct its own test of Note 2(a)(2).  See Pl's Resp. at 12-13.  The Court resists the temptation to perform fact-finding functions on a motion for summary judgment.  However, this issue remains a question of law since Sparks has offered no contradictory evidence on the record before the Court and so no compelling reason exists to discredit Defendant's laboratory testing. The Government's lab report concludes that EM 8/2 PU Trans cannot bend

manually around a cylinder of a diameter of 7mm, at a temperature between 15°C and 30°C without fracturing. Therefore, EM 8/2 PU Trans AS is excluded from classification under Heading 5903.

Since EM 8/2 PU Trans AS is excluded from HTSUS headings 5910 and 5903, the Court must look to another heading for classification. Heading 3921, HTSUS, provides for "[o]ther plates, sheets, film, foil and strip, of plastics." Note 2(m) to Chapter 39 excludes "[g]oods of section XI (textiles and textile articles)." As discussed above, Sparks has failed to demonstrate that the subject merchandise is classifiable under Section XI, and consequently is not foreclosed from classification under Heading 3921 by Chapter Note 2(m). The Court concludes that Entry 0018964-5, containing article EM 8/2 PU Trans AS, is most appropriately classified under Subheading 3921.90.25, HTSUS, as:

| 3921 | Other plates, sheets, film, foil and strip, of plastics: |
|---|---|
| | *      *      * |
| 3921.90 | Other: |
| | *      *      * |
| 3921.90.25 | Combined with textile materials and weighing more than 1.492 kg/m$^2$: [p]roducts with textile components in which man-made fibers predominate by weight over any other single textile fiber 10.3% |

**IV. Conclusion**

For the aforementioned reasons, Defendant must prevail "as a matter of law," based on the evidence before the Court. Anderson, 477 U.S. at 251-52. There remains no factual disputes that must be resolved at trial. As a result, Spark's motion is denied and the Government's motion for summary judgment is granted.

The following entries were abandoned by Plaintiff and are hereby dismissed: 1758482-7, 1758593-1, 0018821-7, 0018917-3, 0018992-6, 0055232-1, 0055126-5, 0055310-5, 005673-7, 0056589-3, 0056740-2, 0057066-1, 0056634-7, 0018743-3, 0018769-8, 0054935-0, 0054712-3. The Court dismisses Entry 0054859-2 for lack of jurisdiction. Plaintiff has failed to establish the elements necessary to its case and upon which it would bear the burden of proof at trial, with respect to entries 0056488-8, 0018909-0, and 0056352-6. Finally, the Court finds that entries 0055038-2 and 0055741-1 are properly classified under Subheading 5903.10.20, HTSUS, and Entry 0018964-5 is classified under HTSUS Subheading 3921.90.25.

                                        /s/ TSOUCALAS
                                        NICHOLAS TSOUCALAS
                                        SENIOR JUDGE


Dated:      June 1, 2010
            New York, New York